## UNITED STATES v. WILSON.
### No. 180.

Circuit Court of Appeals, Second Circuit.
Feb. 15, 1946.

Writ of Certiorari Granted June 10, 1946.

See 66 S.Ct. 1363.

Emanuel H. Reichart, of New York City (J. Bertram Wegman and William G. Fullen, both of New York City, on the brief), for defendant-appellant.

Jerome Vale, Asst. U. S. Atty., of New York City (John F. X. McGohey, U. S. Atty., and Bruno Schachner, Asst. U. S. Atty., both of New York City, on the brief), for plaintiff-appellee.

Before SWAN, CHASE, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

The defendant, formerly an investigator in the Compliance Division of the War Production Board, stood trial in the District Court on an indictment charging him in four counts, under the usual conspiracy statute, 18 U.S.C.A. § 88, with conspiring with Francis A. Capell and Richard C. Atherton, also investigators, to accept bribes in violation of the statute, 18 U.S. C.A. § 207.[1] Capell and Atherton had been

---

[1] This statute makes it a criminal offense, with disqualification from holding any office of "honor, trust, or profit" under the Government of the United States, for any official of, or person acting for, the United States or a department thereof to "ask, accept, or receive any money, or any contract, promise, undertaking, obligation, gratuity, or security for the payment of money, or for the delivery or conveyance of anything of value, with intent to have his decision or action on

indicted earlier, but, having pleaded guilty, were not defendants in this case and appeared as witnesses for the government. After a trial to a jury, defendant was convicted and sentenced on all counts, with sentence suspended on all but the first count. Defendant appeals, assigning several errors in the charge, insufficiency of the evidence to support the verdict, and misconduct of the prosecutor.

■ The four counts of the indictment charged defendant with conspiracy to "ask, accept and receive" bribes from various corporations with intent to have influenced his decision and action on questions of their compliance with certain board orders. His actions were alleged to take the form either of making favorable reports and recommendations for closing the investigation or of failure to make any report whatsoever; and the conspiracy was charged to have existed over a period extending from July 13 through September 21, 1943. As overt acts in support of the first and major count, the indictment charged a conversation between defendant and his coconspirators on or around July 20, and receipt of $50 from Capell around September 1. Overt acts alleged as to the remaining counts were as follows: Count 2, two conversations with Capell on or about August 8 and September 1, and receipt of $200 from Capell around September 7; Count 3, a conversation with Capell around September 15; Count 4, a conversation with Atherton around September 16, and receipt of $100 from Atherton around September 18.

Defendant's major objections to the charge center around the court's treatment of the overt acts. He first contends that the charge as given constituted reversible error because the jury was never informed that it must find commission of an overt act charged in the indictment. Examination of the instructions has not so persuaded us. At the outset of the charge the court carefully summarized the allegations of the four counts and the overt acts pleaded in support of each. It then stated the requirement of § 88 that one or more of the conspirators perform an act to effect the object of the conspiracy. And immediately thereafter, in setting forth the necessary elements of the government's case, it told the jury proof was required: "That some act

was committed by one of the conspirators to effect the object of the conspiracy." This reiteration of the necessity for finding an overt act thus came in the sentences directly following the paraphrase of the indictment and, we think, clearly enough referred back to the acts there alleged. Defendant argues that the jury might well have construed the charge as imposing a requirement only of any overt act in pursuit of the conspiracy—a requirement which it would consider already met by what the court called the "undisputed" testimony, discussed below, that Capell and Atherton had taken bribes. But we think this underrates too greatly the intelligence of a jury in the United States courts. For no reasonable jury could properly imagine that an issue submitted for its determination as a precedent to a verdict of guilt against Wilson had already been completely settled, and that, too, by the admission of two nondefendants that they had committed acts not relied upon in the indictment.

■ Moreover, even if the charge was not as explicit as might have been wholly desirable, defendant took no exception to it at the time. Aware of his failure to object, he now urges that we consider an exception which he later took to the supplemental charge, considered below, as in effect an objection on this point. But the objection as phrased could certainly not have been so understood by the trial judge. The purpose of the new Rule of Criminal Procedure 30, following Civil Rule 51, 28 U.S.C.A. following section 723c, requiring a distinct objection, with the grounds therefor, is, as the precedents show, to inform the trial court of an error or omission so that it may be promptly corrected. This is distinctly the type of case where mere clarification of a charge not incorrect in itself should be sought at once. McDonald v. Jarka Corp., 2 Cir., 144 F.2d 53; United States v. Marino, 2 Cir., 141 F.2d 771, certiorari denied Marino v. United States, 323 U.S. 719, 65 S.Ct. 48; United States v. Manton, 2 Cir., 107 F.2d 834, 846, 847, certiorari denied Manton v. United States, 309 U.S. 664, 60 S.Ct. 590, 84 L.Ed. 1012.

■ Defendant contends with equal vigor, however, that the supplemental charge to which proper objection was taken was itself reversible error. After an hour and ten minutes of deliberation, the jury

---

any question, matter, cause, or proceeding which may at any time be pending, or which may by law be brought before him

in his official capacity, or in his place of trust or profit, influenced thereby."

informed the court of its inability to agree and was recalled for further instructions. At the end of the supplemental charge, one juryman inquired: "Just what has to be determined in this case? Some of us believe that we must prove there was actual money passed and was received. I understood in your charge that that was not necessarily so." The court replied: "The charge in the indictment is that Mr. Wilson conspired with the other two men, Atherton and Capell, to ask, demand or receive a bribe. The crime is not the receiving of a bribe. * * * The charge is conspiracy, not the actual taking of money." We do not agree with defendant's contention that, in so charging, the court "eliminated the overt act of payment." As pointed out above, the necessity for proof of an overt act had already been conveyed to the jury in three different ways. Here the question of the juror was directed to the theory of the government's case and explicitly referred back to the court's earlier charge on that point. The response correctly stated that it was the conspiracy itself, and not its completion through receipt of funds, which was crucial. In its rejection of defense counsel's request for an erroneous charge which followed, the court clearly indicated that it was not taking the question of payment from the jury. It said expressly that whether or not money was passed is "only one of the things to be considered in determining what your verdict shall be."

■ Making every supposition favorable to the defendant, however, and assuming arguendo that the jury might have construed the charge as implying that the overt act of payment need not be proved, we think there was still sufficient ground for its verdict. For all three of the counts which alleged payment as an overt act (Counts 1, 2, 4) also alleged another overt act in the form of a conversation occurring prior to the receipt of funds. Defendant contends that all of these conversations were insufficient either because of misdating in the indictment or because the conversation was at the same time the agreement by which the conspiracy was formed. We do not agree. Capell testified that a general agreement with Wilson by which the latter was to countenance the misdeeds and to be cut in on the receipts took place in mid-July, some two weeks after Capell had come to work at the War Production Board. And the conversations alleged as overt acts in each case took place

subsequently and pursuant to this conspiracy. True, the July conversation was only with Capell, not also with Atherton as charged; but the evidence showed that Atherton came into the conspiracy at approximately that time and participated therein. Hence the later conversations did not initiate the conspiracy, but were properly the overt acts which showed that it was being brought to fruition.

■ Defendant directs a particular attack to Count 1, the count upon which service of the sentence of imprisonment was required. But here the most that his analysis of the evidence purports to show is that the conversation alleged as taking place on July 20 actually occurred on or around September 1. Assuming the correctness of his deduction, however, the act proved was not too remote to support the indictment. United States v. Graff, C.C.S.D.N.Y., Fed. Cas. No. 15,244. Substantial similarity between proof and allegation is all that is required. Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314; United States v. Rosenberg, 2 Cir., 150 F.2d 788, certiorari denied Rosenberg v. United States, 66 S.Ct. 90; Martin v. United States, 10 Cir., 100 F.2d 490, certiorari denied 306 U.S. 649, 59 S.Ct. 590, 83 L.Ed. 1048.

■■ Defendant's further objection that the charge failed to instruct the jury properly as to the infirmities of accomplice testimony finds no support in the cases. It is well established that a defendant in the federal courts may be convicted solely on accomplice testimony, and that, while it is better practice for the court to do so, it is not necessary that it give any qualifying charge. Caminetti v. United States, 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442, L.R.A. 1917F, 502, Ann.Cas. 1917B, 1168; United States v. Becker, 2 Cir., 62 F.2d 1007; United States v. Gallo, 2 Cir., 123 F.2d 229. Here the court went beyond any requirement and instructed the jury that it should consider the personal interest of the witnesses and explicitly that "Testimony of accomplices should be considered very carefully and should be scrutinized with the utmost circumspection." Certainly defendant can require no more than this.

■ Defendant's last objection to the charge is his contention that, by stating that it was undisputed that Capell and Atherton had taken bribes, the court took a substantial question away from the jury.

But no evidence had been offered to refute the admissions of the two conspirators, and the court was merely stating a fact·in declaring it "undisputed." Further, defendant's argument is untenable in view of the express manner in which the court left open the basic question of conspiracy, carefully admonishing the jury that it should not be guided by his or by counsel's statement of facts. No objection was taken at· the trial to this charge.

Defendant has presented us with an elaborate review of the evidence which attempts to point out various contradictions appearing in the testimony of the witnesses for the prosecution. We need add nothing to what we have already said to show that the evidence was sufficient to justify submission of the case to the jury. Beyond this, it seems hardly necessary to repeat that questions of fact were exclusively for it. See United States v. Greenstein, 2 Cir., 153 F.2d 550, and cases cited; United States v. George ·F. Fish, Inc., 2 Cir., 154 F.2d 798.

The various criticisms levelled·at the prosecutor's conduct of the trial do not appear to merit discussion.

Judgment affirmed. .