**Carlin Constantine VENUS, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 16961.**

United States Court of Appeals Ninth Circuit.

Dec. 24, 1960.

Rehearing Denied Feb. 2, 1961.

Hayden C. Covington, Brooklyn, N. Y., Kenneth A. Barwick, Lemon Grove, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., Robert J. Jensen, Minoru Inadomi, Los Angeles, Cal., Asst. U. S. Attys., for appellee.

Before BARNES and JERTBERG, Circuit Judges, and BOLDT, District Judge.

BARNES, Circuit Judge.

Appellant appeals from a judgment of conviction for knowingly failing and neglecting to keep the local draft board advised of the address where mail would reach him at all times. The indictment charged an offense in violation of Title 50 U.S.C.A.Appendix, § 462.[1]

Jurisdiction of the district court was invoked under the provisions of Title 18 U.S.C.A. § 3231 and Title 50 U.S.C.A. Appendix, § 462. Jurisdiction of this court to review the appeal from the judgment rests on the provisions of Title 28 U.S.C.A. §§ 1291 and 1294.

In order to review at least one of the questions presented on this appeal it is necessary to briefly summarize some of the past history of appellant's entanglement with the provisions of the Universal Military Training and Service Act. Appellant registered with the Local Board No. 140 in San Diego County, California, on September 15, 1948. During the years 1950 and 1951 appellant was classified at

---

1. Title 50 U.S.C.A.Appendix, § 462 provides in relevant part as follows:

"(a) Any * * * person charged as herein provided with the duty of carrying out any of the provisions of this title [sections 451–454 and 455–471 of this Appendix], or the rules or regulations made or directions given thereunder, who shall knowingly fail or neglect to perform such duty * * * shall upon conviction in any district court of the United States of competent jurisdiction, be punished by imprisonment for not more than five years or a fine of not more than $10,000, or by both such fine and imprisonment. * * *"

various times in classifications I-A and III-A. On November 19, 1951, appellant returned to the local board a completed conscientious objector form, in which he claimed that he was, by reason of his religious training and belief, conscientiously opposed to participation in war in any form and claimed exemption from both combatant and noncombatant service. During the years 1952 and 1953 appellant was at various times classified in classifications I-A-O, II-A and I-A. Thereafter appellant remained classified or reclassified I-A, this last classification being on September 1, 1955, following an unsuccessful appeal by the appellant to the appeal board. On September 2, 1955, notice of classification was sent to the appellant at Modesto, California, which appellant claimed he never received. Such claim was advanced by appellant in the prosecution of the first indictment returned against the appellant. On October 28, 1955, the local board ordered appellant to report for induction on November 8, 1955, which order to report was likewise sent to Modesto, California, which was likewise claimed by appellant to have never been received.

Appellant failed to report for induction on November 8, 1955, and on August 8, 1957, appellant was charged by indictment with the offense of failing to report for induction on November 8, 1955, at San Diego, California. Following trial of that offense to a jury, appellant was convicted, and appealed from the judgment of conviction to this court. The judgment of conviction was reversed by this court in Venus v. United States, 9 Cir., 1959, 266 F.2d 386. Following such reversal the offense in the indictment was tried twice to a jury, resulting in each case in a mistrial because of failure to reach a verdict in each case on the part of each jury.

On December 23, 1959, a two-count indictment was returned against the appellant. The first count of this new indictment charged appellant with the offense of failing to perform a continuing duty to report for induction in April 1956. The second count of the new in-

dictment charged that appellant was a person within the class made subject to Selective Service under the Universal Military Training and Service Act; that he registered as required by said Act and the regulations thereunder, and became a registrant of local board No. 140; and that he "thereafter had a duty to keep said board advised at all times of the address where mail would reach him; that on or about February 1, 1955 * * * the defendant, Carlin Constantine Venus, knowingly failed and neglected to perform said duty required of him under said Act and the regulations promulgated thereunder, in that he knowingly failed and neglected to keep said board advised of the address where mail would reach defendant."

The offenses charged in the two indictments—the failure to report for induction on November 8, 1955, alleged in the first indictment returned on August 8, 1957, and the two offenses—the failure to perform a continuing duty to report for induction in April 1956, and the failure to keep the local draft board notified where mail would reach appellant at all times—set forth in the indictment returned on December 23, 1959, were consolidated for trial. The case was tried to a jury in May of 1960. Following deliberations of three days, the jury returned a verdict finding appellant guilty on the second count contained in the second indictment. The jury reported that it was unable to agree on the offense set forth in the first indictment, and on count one of the second indictment. Thereafter the trial court dismissed the first indictment and the first count of the second indictment sua sponte "in the interests of justice, on the ground that there had been now four trials." Appellant was committed to custody for three years, and ordered to pay a fine of $500.00.

■ On December 29, 1959, the appellant moved the district court to dismiss the indictment returned on December 23, 1959, against appellant, on the ground that the delay of appellee in returning the indictment charging appel-

lant with failure to keep the local draft board advised at all times of an address where mail would reach him deprived appellant of his right to a speedy trial, as guaranteed by the Sixth Amendment to the Constitution of the United States. This motion was denied by the district court.

One of appellant's specifications of error on this appeal is that the district court committed reversible error in so doing. We will consider this assignment of error before proceeding to the other points involved in the review of this appeal.

The indictment returned against appellant on December 23, 1959, alleged that the offense set forth in the second count was committed on or about February 1, 1955. Hence the indictment was returned within the five-year period of limitations specified by Title 18 U.S.C.A. § 3282.[2] Trial on this offense commenced on May 5, 1960, and was concluded May 14, 1960, which was less than five months from the date of the return of the indictment.

Appellant concedes "there are a large number of cases that hold that a prosecution is not barred by the statute of limitations so long as it is brought within the five-year statutory period. The courts have held that limitation does not apply even if the indictment is delayed to near the end of the five-year period." (Appellant's Opening Brief, p. 54.) Mindful of the above stated concession, appellant contends that the delay of appellee in causing appellant to be indicted was violative of the speedy trial provisions of the United States Constitution. No claim is advanced by appellant that he was arrested, detained or held in custody on the offense charged in count two of the indictment prior to the return of the indictment. In short, appellant's argument is that he should have been sooner indicted. We find no merit

in this contention. As stated in Parker v. United States, 6 Cir., 1958, 252 F.2d 680, 681, certiorari denied 356 U.S. 964, 78 S.Ct. 1003, 2 L.Ed.2d 1071:

"The provisions of the Sixth Amendment guaranteeing a speedy trial to anyone charged with an offense, contemplates a pending charge and not the mere possibility of a criminal charge."

See also Iver Ikuko Toguri D'Aquino v. United States, 9 Cir., 1951, 192 F.2d 338, at page 350, rehearing denied 203 F.2d 390, 9 Cir., certiorari denied 1952, 345 U.S. 935, 72 S.Ct. 772, 96 L.Ed. 1343, in which this court stated:

"Appellant however says that her military detention in Japan in the year following October, 1945, demonstrates that she was denied a speedy trial. We shall have occasion to refer to the character of the detention later in this opinion, but wholly apart from whether that detention was or was not in accordance with law, it has no bearing whatever upon the question of her right to a speedy trial, which is one that arises after a formal complaint is lodged against the defendant in a criminal case."

Appellant's reliance on United States v. Provoo, D.C.Md.1955, 17 F.R.D. 183, affirmed 1955, 350 U.S. 857, 76 S.Ct. 101, 100 L.Ed. 761, and Taylor v. United States, 1956, 98 U.S.App.D.C. 183, 238 F.2d 259, is completely misplaced. In the Provoo case the defendant was arrested on a formal charge in September 1949, but was not indicted in the proper district until October of 1954. In the Taylor case the indictment was returned on February 23, 1954, and trial did not commence until March 28, 1956. It clearly appears in the Taylor case that the defendant in no manner waived his right to a speedy trial.

---

**2.** "§ 3282. Offenses not capital. Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the in-formation is instituted within five years next after such offense shall have been committed. As amended Sept. 1, 1954, c. 1214, § 10(a), 68 Stat. 1145."

Before proceeding further we will briefly summarize the evidence which was before the jury relevant to the offense for which appellant was convicted.

When appellant registered with his local draft board in San Diego County, he gave as his mailing address 184 National Avenue, Chula Vista, California. The clerk of the local board testified that at some time prior to June 7, 1954, appellant gave as an address where he could always be reached the address of his parents, which was 650 Eleventh Street, San Diego, California. On July 14, 1950, notice of classification was mailed to appellant at the address at 184 National Avenue, Chula Vista, California, but was returned to the local board marked "Moved, left no address." Between that date and June 7, 1954, appellant notified the local board of change of address on five separate occasions, the last change of address prior to June 1954 being 650 Eleventh Street, San Diego, California. On June 7, 1954, appellant filed with the local draft board a letter in which he stated: "At this time I wish to inform you of my departure from San Diego to Modesto, Calif. because of secular employment. The Federal Bureau of Investigation I have notified, when in Los Angeles after induction procedures. My new address is (Same employer) 1431 10th St. Modesto, California, but can be reached within one or two days, at my San Diego address." The return address given on the envelope enclosing the letter was 650 Eleventh Street, San Diego. The letter with envelope attached is in the draft board files. The draft board file of appellant is contained within three cover sheets which on the outside show the many notifications of changes of address by appellant. One of these cover sheets, following the listing of the Modesto address, contains the notation in red pencil "(see letter attached)". The other two cover sheets contain no such notation. The explanation given by the clerk of the board for the presence of three cover sheets was that new cover sheets are used when the old cover sheets become "dog-eared." Appellant lived at Modesto, California, from June 7, 1954, to February 7, 1955, on which date he moved to Los Angeles County. No changes of addresses were received by the local board from the appellant for the period from June 7, 1954, to the end of 1955. Following appellant's return to Los Angeles County from Modesto, he moved from one address to another on five or six occasions but did not notify the local draft board of any of said addresses because said addresses were temporary. Appellant testified that in the middle of February 1955, his parents moved from 650 Eleventh Street to 1120 Thirtieth Street, San Diego. Appellant's father testified that he left a forwarding address with the San Diego Post Office, but appellant did not file any forwarding address with the Post Office in this instance. Appellant testified that on or about February 19, 1955, he deposited a government post card in the United States Post Office at Los Angeles, addressed to his local board, notifying the board that his address had been changed to 1120 Thirtieth Street, San Diego, California. Appellant's draft board file does not reveal the receipt of this card by the draft board. It appears from the record that in February 1955, and for some months prior thereto, the Selective Service file of appellant was out of the possession of the local board and in the hands of the Selective Service officials in Los Angeles. A dummy file was used by the clerk of the local board during this period. The clerk of the local board testified that if the card had been received it would have been placed in appellant's file. On September 2, 1955, there was mailed to the appellant by the local board notification of his I–A classification, addressed to 1431 Tenth Street, Modesto, California. On October 28, 1955, the local draft board mailed to appellant at the Modesto address an order dated October 28, 1955, to report for induction at San Diego on November 8, 1955. The envelopes containing the notice of classification and the order to report for induction contained the return address of the local board, but neither letter was

ever returned to the local board. The appellant testified that he never received either the notice of classification or the order for induction. No notices were sent by the draft board to appellant at any other address.

It should be borne in mind that we are not considering any offense charged against the appellant except that on which appellant was convicted, to-wit, that appellant knowingly failed and neglected to keep the local board advised of the address where mail would reach him. Section 1641.3 of the Selective Service Regulations [3] places the duty on each registrant to keep the local board advised at all times of the address where mail will reach him.

The validity of Section 1641.3 of the Regulations was upheld by the Supreme Court of the United States in Bartchy v. United States, 319 U.S. 484, at page 488, 63 S.Ct. 1206, 1208, 87 L.Ed. 1534, in which opinion the following interpretative language appears:

> "We think the Government correctly interprets the Act, § 11, and the regulation, § 641.3 not to require a registrant who is expecting a notice of induction to remain at one place or to notify the local board of every move or every address, even if the address be temporary. * * The regulation, it seems to us, is satisfied when the registrant, in good faith, provides a chain of forwarding addresses by which mail, sent to the address which is furnished the board, may be by the registrant reasonably expected to come into his hands in time for compliance."

We will now consider appellant's assigned error "that the district court erred in failing to grant appellant's motion for judgment of acquittal made at the close of all the evidence, and renewed after the verdict of the jury."

Under this point, the appellant states:

> "The gist of the argument under this point is—

> "(1) The indictment charged appellant with the offense of failing to keep his local board informed as to where mail would reach him on February 1, 1955, and as a matter of fact on such date mail would have reached him at Modesto, California;

> "(2) Appellant at all times had in his draft board file a letter written in June of 1954 that informed the local board of an address in San Diego where he could always be reached by mail."

In light of our review of the evidence in this case and the interpretative language in Bartchy, we are convinced that the trial court was correct in the denial of the appellant's motion. Section 1641.3 of the Regulations requires a registrant to keep his local board *advised at all times* of the address where mail will reach him. Count two of the second indictment returned against the appellant limited the appellant's duty to "on or about February 1, 1955." During the course of the trial, the district court, in its rulings on the admission of evidence and in its instructions to the jury, held that proof of the offense *at any time during the month of February 1955 would support the charge in the indictment*.[4] It is necessary for

---

3. Section 1641.3 of the Selective Service Regulations (32 C.F.R. § 1641.3) reads as follows:

"*Communications by Mail.*—It shall be the duty of each registrant to keep his local board advised at all times of the address where mail will reach him. The mailing of any order, notice, or blank form by the local board to a registrant at the address last reported by him to the local board shall constitute notice to him of the contents of the communica-

tion, whether he actually receives it or not."

4. "Now this indictment alleges that this occurred on or about February 1, 1955. The proof that you heard on that encompasses a period not earlier than February 1, 1955 and running up to February 20th or 21st, 1955, and the Government is making no contention that if Mr. Venus mailed the change of address on February 20th or 21st, whatever the date was he claimed he mailed it, that

us to pass upon the correctness of such rulings and instructions. We find no error in them.[5]

It is undisputed that appellant remained in Modesto until February 8, 1955. We might assume, although there is no proof of the fact, that mail directed to appellant by the local draft board during *the early days* of February to the Modesto address would have reached him. We cannot assume that mail directed by the local draft board during the month of February, but after the early days thereof, to the appellant at the Modesto address would have reached him. No mail was directed to him by the local draft board at the Modesto address at any time during the month of February 1955. In fact, no mail was directed to him at the Modesto address by the local board until September 1955, some six months later. In the letter of June 7, 1954, in which appellant advised the local draft board of the new Modesto address, he stated that his employer was the same as one previously reported to the draft board, "but [I] can be reached within one or two days at my San Diego address." The cover sheet of appellant's draft board file shows that appellant's address at the time that appellant fur-

nished to the draft board the Modesto address was 650 Eleventh Street, San Diego, California. Therefore, when the draft board received the letter, it had knowledge of that San Diego address. But that address was not *then* the address of the parents. No change in the parents' address had been given the board.

The record shows that the Modesto address was the sixth change of address which appellant furnished to his local draft board. The record further discloses many other communications from appellant to the draft board from the date of his registration to his last change of address, and several personal appearances before the board, all of which disclose his understanding of the duty placed upon him by law. The voluminous record before the draft board discloses that appellant was persistent and determined in his efforts to resist the I–A classification and to keep alive and exhaust his administrative remedies, up until February 1955. After that time he no longer complied with the law with which he was so familiar.

■■ Appellant had a simple duty to perform—to keep his local draft board

---

that was too late. The Government's contention is that he didn't mail it.

"So therefore this count is going to concern solely that simple issue, was that notice mailed sometime in February? It doesn't make any difference when it was mailed in February, if it was mailed. It is just about that simple. The Government doesn't have to prove the exact date. The Government alleges that the defendant did not do this act on or about the 1st of February. But the proof, as I say, encompasses a period that runs on up to the 20th. * * *" (Tr. p. 508.)

    \*     \*     \*     \*     \*

"But you are not concerned with what particular date that card was mailed in February, because the Court has already instructed you that the area covered in the evidence, sometime between the first and the 21st, is close enough to the charge in the indictment and is a close enough time for the defendant's mailing the change of address card." (Tr. p. 518.)

5. See United States v. Tramaglino, 2 Cir., 197 F.2d 928, 932, certiorari denied 344 U.S. 864, 73 S.Ct. 105, 97 L.Ed. 670. There the Court said: "Our decision in United States v. Wilson, 2 Cir., 154 F.2d 802, 805, requires only 'substantial similarity' between the indictment dates and those brought out in trial; all the versions here were within a few weeks of one another and of the indictment dates." In the Wilson case cited in Tramaglino, the indictment charged that a conversation material to the offense occurred on or about July 20. The Court held that even if the conversation actually occurred on or around September 1, as defendant's analysis of the evidence indicated, the act proved was not too remote to support the indictment.

A variance between what is charged in the indictment and what is proved is not material or prejudicial unless it involves elements of surprise that would hamper defendants' efforts to prepare their defense. United States v. Ragen, 314 U.S. 513, 526, 62 S.Ct. 374, 86 L.Ed. 383.

advised at all times where mail would reach him. This he failed to do. Two letters addressed to appellant at the last address he had given the board were never returned to the board, yet appellant claimed he had not received them. The postcard appellant says he mailed to the board was never delivered to it. While there is a conflict in the testimony, the jury had the right and did choose to believe appellant's failure to advise the draft board of his change of address was knowingly and wilfully done. The question of appellant's truthfulness and good faith was a question of fact for the jury's determination. The address given as that of appellant's parents, "where he could always be reached," was not accurate; no new address was given to the board, either by appellant or his parents, when the latter moved. That appellant had, on six previous occasions, advised the board of a change of address proves nothing that is of aid to appellant —it merely proves that he, with complete knowledge and understanding of his obligation and duty under a law (the provisions of which were thoroughly familiar to him), knowingly violated that law for a period of eighteen months, from early June 1954 to the end of 1955. (Section 1641.3 of the Selective Service Regulations (32 C.F.R. § 1641.3).) Appellant had a continuing duty during that eighteen month period to give the board accurate information as to where he could be reached.

To shift the blame for appellant's failure to follow the law to the board by claiming that but one of the three coversheets had the notation "(see letter attached)", and that therefore there was no proof appellant could not have been reached at such address because no letters were sent to the parents' address, is beside the point. The address so given was *not* the parents' address "at all times" during the eighteen months' failure by appellant to furnish his own address, nor "on or about February 1st, 1955." Appellant was not required by law to furnish his address to the local board only if that board might have letters it wanted to mail him—but *at all times*.

In the opinion of the jury, in which we join, this appellant had not met the test laid down in Bartchy v. United States, supra, that a registrant must "in good faith [provide] a chain of forwarding addresses by which mail, sent to the address which is furnished the board, may be by the registrant reasonably expected to come into his hands in time for compliance." In Bartchy, the registrant, a seaman, had relied on the regular procedure of his Maritime Union (procedures which had been effective in the cases of other registrants), but which there failed because of "a mistake of the official of the union."

In Ward v. United States, 5 Cir., 1952, 195 F.2d 441, the appellate court refused to disturb the verdict of the jury convicting defendant. But there Ward had given to the local board, on its questionnaire, the address of his employer as well as his residence address. Ward moved from his residence address without notifying the board, relying on the business address which remained "good" and at which Ward had proved he did receive mail. This business address the board did not attempt to use, despite Selective Service Regulations requiring them to do so. Section 1642.41(b) of Selective Service Regulations. See note I of Ward v. United States, supra. The Supreme Court in a *per curiam* opinion without discussing the facts held the record did not support the charge of a deliberate purpose to violate the law. Thus, the facts differ. 1935, 344 U.S. 924, 73 S.Ct. 494, 97 L.Ed. 711.

Here the evidence is such that a trier of fact could well believe that no good faith existed on the part of Venus with respect to his continuing duty between June 7, 1954, and early 1956 to inform the board; and that he had knowingly and with deliberate purpose violated the law. That factual finding implicit in the jury's verdict is binding on this court, in the absence of error. We cannot hold

the jury's verdict erroneous as a matter of law.

The judgment is affirmed.

JERTBERG, Circuit Judge (dissenting).

I am unable to agree with the conclusion reached in the majority opinion that the trial court did not err in failing to grant appellant's motion for judgment of acquittal made at the close of all of the evidence and renewed after the verdict of the jury. In Bartchy v. United States, 319 U.S. 484, 63 S.Ct. 1206, 87 L.Ed. 1534, the Supreme Court stated that the regulation which placed upon appellant the duty to keep his local draft board advised at all times of the address where mail would reach him "is satisfied when the registrant, in good faith, provides a chain of forwarding addresses by which mail, sent to the address which is furnished the board, may be by the registrant reasonably expected to come into his hands in time for compliance." The crucial period in this prosecution, as stated in the trial court's instructions to the jury, is the month of February 1955. The letter of June 7, 1954, directed by the appellant to the draft board, and quoted in the majority opinion, stated that appellant's employer was the same one as the one previously reported to the draft board, and that appellant could be reached "within one or two days" at his San Diego address. The letter was enclosed in an envelope which bore the return address of 650—11th Street, San Diego, California, which appellant had previously furnished to the draft board. This address was also the address of appellant's parents, which had been furnished to the draft board long prior to June 7, 1954 as an address where appellant could always be reached. The clerk of the local draft board testified that the appellant had given his parents' address as the place where he could always be reached. The clerk further testified that the appellant was specifically requested not only to give the address

where he lived or resided but also to give a reference of someone—his parents in this case—who would know his address or through whom mail would reach him. The clerk further testified that the return address on the outside of the envelope referred to the address of appellant's parents. In explaining why the notation "see letter attached" was made on the cover sheet of appellant's draft board file opposite appellant's Modesto address, the clerk stated "I made that entry for the simple reason that if any mail were returned to us from the Modesto address that I would look for and try and contact him through his San Diego address." No notices were sent by the local draft board to the appellant at either the Modesto or the San Diego address during the month of February 1955. The record is likewise clear that no effort was made by the draft board at any time to contact appellant's parents or his employer. In fact, no mail was directed by the local draft board to the appellant until September 1955. It is undisputed that appellant's parents remained at 650—11th Street, San Diego, California, until the middle of February 1955, at which time they moved to 1120 —30th Street, San Diego, at which time they furnished to the San Diego Post Office the latter address as the place where mail should be forwarded. It appears clear to me that notice directed to the appellant at 650—11th Street, San Diego, Calfornia, during the month of February 1955 would have come into the hands of the appellant, notwithstanding the fact that appellant's parents moved to a new address about the middle of February. Also, in my view, it is pure speculation to assume that mail directed to the appellant at the Modesto address during the month of February 1955 would not have come into the hands of the appellant.

I am convinced that the evidence in this case meets the test laid down in Bartchy, and that appellant, in good faith, provided a chain of forwarding addresses by which mail sent to the

address which appellant furnished the board could be by the appellant reasonably expected to come into his hands in time for compliance. I would reverse the judgment of conviction.