**UNITED STATES of America, Plaintiff-Appellee,**

v.

**James Francis CASHION, Defendant-Appellant.**

**No. 73-1386.**

United States Court of Appeals, Fifth Circuit.

April 8, 1974.

---

Louis Vernell, Miami, Fla., for defendant-appellant.

Robert W. Rust, U. S. Atty., Lawrance B. Craig, III, Harold F. Keefe, Asst. U. S. Attys., Miami, Fla., for plaintiff-appellee.

Before THORNBERRY, GODBOLD and CLARK, Circuit Judges.

GODBOLD, Circuit Judge:

The appellant was convicted of the charge that on or about December 6, 1971, he "did knowingly and unlawfully fail and neglect to perform a duty required of him . . . in that he did fail and neglect to keep his local [Selective Service] Board advised of the address where mail would reach him,"[1] and was sentenced to $500.00 fine and 18 months probation. We affirm the conviction.

At age 18 Cashion had registered with his Board in Miami, Florida, in 1963. Subsequently he received a student deferment while attending college for three quarters. After that and until about the time he was arrested, a period of approximately seven years, he worked part of the time as a carpenter and spent part of the time racing sailboats. Usually he resided part of each year in the Chicago area, and part of the year in the Miami area, and some periods traveling back and forth between the two areas in a somewhat leisurely fashion. Following is a specific chronology of pertinent events.

1. In violation of 50 U.S.C. App. § 462.

June 1967: Cashion was ordered to report for induction but did not report. He testified that he never received the order but learned of it and discussed with his Board having his file transferred to a draft board in the Chicago area.

July 14, 1967: Cashion furnished the Board in Miami with an address of 1217 Michigan Avenue, Evanston, Illinois, which he described at trial as the address of a lifelong friend.

April 18, 1968: A notation was made by the Board of a telephone conversation which appears to have related to defendant's younger brother, Joseph William Cashion, but to have revealed information about defendant's whereabouts. A copy appears to have been placed in the file of each of the two brothers. The memo is of a phone call from a person identifying himself as the father of Joseph William Cashion, the younger brother. The memo states that the person said he had received a letter from the Board to Joseph William Cashion concerning his failure to report for a physical examination, that he did not know where registrant was but would "notate" the letter and return it to the Board. The person stated that John B. Cashion, Jr., an attorney, at Suite 450, 10 South LaSalle Street, Chicago, might have knowledge of the whereabouts of James Francis Cashion (the instant defendant), that James Francis had been in Miami but had returned to Chicago, and that the spokesman believed he was living aboard a boat and could be reached in care of the Harbormaster, Monroe Street Harbor, Chicago. The spokesman also gave the address of another son, older than both of the two just referred to.

October 8, 1970: An order was sent to 1217 Michigan Avenue, Evanston, Illinois, directing Cashion to report for physical examination. It was returned to the Board with a notation that the registrant had moved and was no longer there.

October 21, 1970: An induction order was sent to the same address, ordering Cashion to report for induction on November 2, 1970, at Coral Gables, Florida. Between October 15 and November 15, 1970, the appellant was, as he described it, "in Ohio, Pittsburg, New York, Washington, D. C., driving down to Miami."

November 2, 1970: Cashion did not report for induction.

February 8, 1971: A copy was placed in defendant's file of a report to the U. S. Attorney concerning a violation of the Act. The report referred to an effort to locate the registrant by means of mail sent to the brother J. B. Cashion, Jr. [the attorney in Chicago] and not returned. It also referred to the phone message from the father in 1968. It listed as "Persons who will always know address [of registrant]" these:

Mrs. Peah Clarke
1013 Greenleaf, Wilmette, Ill.

Mr. and Mrs. J. B. Cashion
1526 N. LaSalle St., Chicago

Mr. J. B. Cashion
Suite 450, 10 S. LaSalle St., Chicago.

Who designated these as "always know" addresses was not shown.

Spring, 1971: FBI agents talked with defendant at a Yacht Club on Lake Michigan and advised him that he had failed to report for induction and that he was required to keep his draft board advised of his current address. Defendant had attained age 26. He denied having received induction orders.

May 10, 1971: Defendant wrote the Board, stating he had been contacted by the FBI about his draft status, did not know what it was all about and would appreciate their telling him. He said also: "I am staying with my brother Jerry in Chicago for the summer at 1930 N. Cleveland Street, Chicago, Illinois—60614." This, defendant stated at trial, was the residence of his older brother and younger brother and the latter's wife.

Fall, 1971 (around September and October): According to defendant's testimony, his younger brother and wife moved to Bloomington, Indiana, to at-

tend college, and he left a change of address card with the post office and went with them for a short visit. He then spent six or seven weeks traveling in a camper around Kentucky, Tennessee, Georgia, North and South Carolina, New Orleans, and through the panhandle of Florida and thence to Miami.

October, 1971 (approx.): Defendant arrived in the Miami area.

November 30, 1971: A notice was sent to report for induction on December 9, 1971, mailed to the North Cleveland Street, Chicago, address.

December 6, 1971: The notice was returned with stamped notations "Moved, Left No Address" and "Return to writer Unclaimed."

May 3, 1972: Defendant arrested in the Miami area.

May 26, 1972: Cashion notified his Board he was at 3969 New York Street, Coconut Grove, Florida.

The main point of the appeal is whether the court erred in denying motion for judgment of acquittal.[2]

■ Failure of a registrant to keep his board advised of where mail will reach him is not a crime unless the registrant knowingly and wilfully fails, neglects or refuses to perform the duty. Graves v. United States, 252 F.2d 878 (CA9, 1958). "[A] registrant who is expecting a notice of induction [is not required] to remain at one place or to notify the local board of every move or every address, even if the address be temporary. . . . The regulation . . . is satisfied when the registrant, in good faith, provides a chain of forwarding addresses by which mail, sent to the address which is furnished the board, may be by the registrant reasonably expected to come into his hands in time for compliance." Bartchy v. United States, 319 U.S. 484, 488–489, 63 S.Ct. 1206, 1208, 87 L.Ed. 1534, 1537 (1943).

■ The appellant had notified his Board that the address on North Cleveland Street, Chicago, to which the November 30, 1971, induction notice was sent, was a "summer address." The period of its viability had expired, just as registrant had said it would. Appellant urges upon us that the Board's action in sending this induction order to a stale address in some fashion freed him of all his responsibilities. While it resulted in his non-receipt of the order, requiring a directed verdict of acquittal on the failure to report count, the question remains whether once the summer expired the Board possessed a chain of forwarding addresses, provided by the registrant, through which mail might reasonably be expected to come into his hands in time for compliance. There was no such chain with the summer address as the first link, which we know because that is the address to which the Board dispatched the order of November 30, 1971, which came back December 6 marked that Cashion had moved and left no address. The jury was entitled to disbelieve defendant's oral testimony that he left a change of address card with the post office. The card was not produced, and the most logical inference from the notations on the letter are that it never existed.

The only previous address appellant had ever given the Board was 1217 Michigan Avenue, Evanston, Illinois, furnished in 1967. The order of October 8, 1970, to report for a physical had been sent to that address and returned noted that the addressee had moved and was no longer there. The induction order of October 21, 1970, also sent to the Michigan Avenue address was not returned, but Cashion did not comply with it and he told the FBI agent he never received it.

Thus appellant's claim that there was insufficient evidence of requisite intent is off the target. Neither of the only two addresses he had provided was where he was present in the fall of 1971. Experience had established that neither was a link in a chain of forwarding ad-

---

2. The motion was granted as to another count charging failure to report for induction.

dresses. There is a total absence of evidence that mail sent to either of those two addresses would be forwarded to any South Florida address.[3] Despite two orders to report for physicals and three induction orders over a four-year period, the appellant has never obeyed any order and has never acknowledged receiving a single order, letter or inquiry except those made in person by FBI agents.

There is no evidence that in the fall of 1971, over the period of six to seven weeks that Cashion was traveling in a camper through a dozen or more states, any one of the various persons referred to in his file had knowledge of where he was or how to reach him or that he made the slightest effort to stay in contact with any of the various Chicago and Evanston addresses. The jury was entitled to conclude that he dropped out of sight during the last period the Board was seeking him, and, before the last order was sent, surfaced in the Miami area where his Board was located without ever giving it notice.

 Appellant also claims that his prosecution was barred by 32 CFR § 1642.41(b) which provided

In endeavoring to locate and to secure the compliance of a delinquent prior to reporting him to the United States Attorney, the local board should contact the delinquent and the "employer" or "person who will al-

ways know" the delinquent's address, as shown on the Registration Card (SSS Form No. 1), or any other person likely to know his whereabouts. The local board may enlist the aid of local and State police officials or any other public or private agencies it deems advisable. In no event shall the local board order or participate in the arrest of a delinquent.[4]

We need not decide whether Cashion is within the scope of this regulation. It was revoked effective December 10, 1971[5] and was not replaced by any corresponding new regulations. The evidence presented was sufficient to show that his course of conduct continued at least until some time in 1972. (Cashion was located by the FBI in the Miami area and arrested in early May 1972.)[6] Thus unless the "on or about December 6, 1971" date recited in the indictment restricted prosecution to an offense committed before December 10, Cashion was convicted of an offense committed after the regulation was revoked and cannot, therefore, claim its protection. The recited date did not impose so severe a constraint. In United States v. Preston, 420 F.2d 60 (CA5, 1969), the indictment charged knowing failure to report for induction on September 5. This court, assuming that the evidence was insufficient to prove knowledge as of that date, sustained the defendant's conviction on the theory that the offense was a continuing one, that the indictment was not

---

3. Cashion testified that in October 1970 he "definitely knew" that his mail would get to him through 1217 Michigan Avenue, Evanston, Illinois, and that is why he gave that address [of a long-time friend]. But one notice dispatched to that address in October 1970 was returned marked that Cashion had moved and was no longer there, and the induction notice sent to that address later in the same month was not obeyed and ultimately Cashion denied receipt of it. And when that induction order was sent appellant was driving around in Ohio, Pennsylvania, New York, Washington, D. C., and on to Miami.

4. Cases involving this regulation include United States v. Burton, 472 F.2d 757 (CA 8, 1973) ; United States v. Chudy, 474 F.2d

1069 (CA9, 1973) ; Kokotan v. United States, 408 F.2d 1134 (CA10, 1969) ; Venus v. United States, 287 F.2d 304 (CA10, 1960), rev'd per curiam 368 U.S. 345, 82 S.Ct. 384, 7 L.Ed.2d 341 (1961) ; Ward v. United States, 195 F.2d 441 (CA5, 1952), rev'd per curiam 344 U.S. 924, 73 S.Ct. 494, 97 L.Ed. 711 (1953).

5. 36 Fed.Reg. 23383 (1971). See United States v. Chudy, supra, at 1071 n. 3 of 474 F.2d.

6. We believe it is readily apparent that failure to keep a local board advised of an address where mail will reach a registrant is, by its nature, a continuing offense. See Venus v. United States, 287 F.2d 304, 310–311 (CA9, 1960), rev'd on other grounds, 368 U.S. 345, 82 S.Ct. 384, 7 L.Ed.2d 341 (1961).

required to specifically charge the continuing offense, and that the evidence demonstrated knowledge some time after September 20. We find nothing which suggests that a different analysis should be applied in this case.

Additionally, the regulation relied on was directed to the method through which a local board initiated prosecution by a U. S. Attorney. The indictment on which Cashion was tried was not returned until August 27, 1972. After December 10, 1971, the local Board and the U. S. Attorney were no longer operating under the constraints of § 1642.-41(b) and could initiate prosecution even if they had not complied with the provisions of the former regulation.

Affirmed.

THORNBERRY, Circuit Judge (concurring in the result):

I agree that the conviction should be affirmed. However, I cannot join in the majority opinion's treatment of appellant's claim that his conviction was barred by 32 CFR § 1642.41(b). That regulation, while it was in force, required the local board to contact the "person who will always know" the registrant's address, after an induction order mailed to the registrant had been returned to the board. There was a reason for the regulation other than to indicate the method through which a local board might initiate prosecution. Where the board had not complied with the regulation, the inference might be drawn that the registrant could be reached through a "person who will always know" his whereabouts, thus dispelling the notion that the registrant deliberately failed to apprise his board of an address where mail would reach him.

And in cases where the regulation applied, we could not sustain a conviction unless we could find that the board had made some compliance with it. *See* United States v. Chudy, 9th Cir. 1973, 474 F.2d 1069, 1071.

The majority opinion rejects the appellant's contention by suggesting that it is immaterial whether the local board complied with the regulation, because the evidence was sufficient to show that the appellant's "course of conduct" continued at least until some time in 1972 and thus beyond the revocation date of the regulation. My concern is the extent to which evidence of a pre-December 10 course of conduct can be relied upon to sustain a conviction if the government has failed to comply with pre-December 10 law. The more fundamental question is the extent to which the government can retroactively diminish a defendant's rights by the administrative removal of a substantive requirement for conviction. These are difficult questions which, in my opinion, are not properly considered by the majority opinion in its suggestion that the regulation is of no moment.

Under the circumstances of this case and viewing the evidence in the light most favorable to the government, I would hold that the local board complied with the regulation. There is evidence in the record indicating that the board attempted to contact one or more persons listed in the appellant's file as persons "who will always know" the appellant's address and that these contacts were made after the appellant had failed to comply with induction orders.

I would leave the difficult questions for another day and would make no suggestion that it is immaterial whether the board complied with the regulation.