UNITED STATES of America, Appellee,

v.

Thomas Martin AUSTIN, Appellant.

No. 713, Docket 75–1382.

United States Court of Appeals,
Second Circuit.

Argued Feb. 2, 1976.

Decided March 17, 1976.

Certiorari Denied July 21, 1976.
See 96 S.Ct. 3176.

Thomas R. Maher, Asst. U. S. Atty., Brooklyn, N. Y. (David G. Trager, U. S. Atty. for the Eastern District of New York, Brooklyn, N. Y., Paul B. Bergman, Asst. U. S. Atty., Brooklyn, N. Y., of counsel), for appellee.

Jesse Berman, New York City, for appellant.

Before HAYS, MULLIGAN and GUR-FEIN, Circuit Judges.

MULLIGAN, Circuit Judge:

This is an appeal by Thomas Martin Austin from a judgment of the United States District Court for the Eastern District of New York, Hon. Jack B. Weinstein, entered on November 7, 1975 after a trial without a jury, convicting Austin of having failed to keep his local draft board advised of an address where mail would reach him, in violation of 50 U.S.C. App. § 462(a) and then—32 C.F.R. § 1641.3. Sentence was suspended and Austin was placed on probation under the Youth Corrections Act, 18 U.S.C. § 5010(a).

The appellant was initially charged in a three-count indictment with 1) refusal to submit to induction, 2) failure to comply with a pre-induction order for a physical examination, and 3) failure to keep his local board advised of an address where mail could reach him. Judge Weinstein, although finding that a prima facie case had been made out on all three counts, dismissed the first two counts finding no proof beyond a reasonable doubt that Austin actually received the notices of induction and physical examination.

On this appeal, Austin first argues that the Government failed to prove beyond a reasonable doubt that he failed to advise his

board of an address where mail would reach him. There is no question that Austin was registered for military service under the Selective Service Act (50 U.S.C. App. § 451, et seq.) with Local Board 64 in Jamaica, Queens. His selective service file, which was admitted in evidence at his trial, reveals that upon registration he gave as his address 115–46 144th Street, Queens where he resided with his mother. The law (50 U.S.C. App. § 465(b)) requires that:

It shall be the duty of every registrant to keep his local board informed as to his current address and changes in status as required by such rules and regulations as may be prescribed by the President.

The pertinent regulation, the former 32 C.F.R. § 1641.3, provides:

It shall be the duty of each registrant to keep his local board advised at all times of the address where mail will reach him. The mailing of any order, notice, or blank form by the local board to a registrant at the address last reported by him to the local board shall constitute notice to him of the contents of the communication, whether he actually receives it or not.[1]

There is no record of any other address for Austin in the Selective Service file. Between 1968 and 1970 a number of notices were sent to Austin at the address given by him. Austin's mother testified for the Government that Austin, who had lived with her at that address when he registered for the draft in 1968, had left home some-

time in 1968 or 1969 and left no forwarding address. She did not know his whereabouts and could not contact him in any way. She testified that she returned two letters addressed to her son from Selective Service in June and October 1969 with the notation "Please return to sender. Receiver not at this address." A notice of classification of Austin as a student entitled to deferment sent in March, 1968 was not returned. On July 16, 1969 the Board notified Austin that he was classified 1–A and that notice was not returned either. In October 1969 Austin was notified to report for a pre-induction physical. The order was returned with the note "Return to Sender—Receiver not at this address." A subsequent pre-induction physical notice in June 1970 and an induction notice of July 16, 1970 were not returned or obeyed.

When he registered, Austin named a Mrs. Chapman as the person who would always know his address. The Board contacted her in July 1969 and again in July 1970 and both times was advised that the appellant's address remained unchanged from that initially given. The court below characterized the testimony of Austin's mother as ambiguous on the issue of whether or not she turned over some of the unreturned mail to her son or otherwise informed him of its contents.[2] The fact that the Board continued to send mail to the same address from 1968 to 1970 as found below indicates that Austin supplied that body with no new address. There was no affirmative evidence

---

1. The regulation was changed after the filing of the indictment in this case. The appropriate regulation is now 32 C.F.R. § 1641.1(a), which repeats the requirement that every Selective Service registrant "keep his local board currently informed in writing of the address where mail will reach him."

2. Appellant's argument that the address initially given was in fact accurate and was never inoperative because some mail sent there was not returned is inconsistent with the dismissal of the first two counts which was premised on the finding that the Government had failed to establish that Austin ever received his pre-induction physical notice or his notice of induction. There was no proof that Austin's mother ever gave or otherwise conveyed these materials to her son. Moreover, she did testify that

he left home and gave no forwarding address and she did not know where he was. Appellant's reliance on *Bartchy v. United States,* 319 U.S. 484, 63 S.Ct. 1206, 87 L.Ed. 1534 (1943) is misplaced. While the Court there indicated that the Act does not require a registrant to remain at one place or to notify his board of every move, Bartchy was a peripatetic seaman who testified that he left a chain of forwarding addresses through which he could reasonably be expected to be reached. There is no such evidence here. Substantially the same facts as found here resulted in an affirmance of the conviction in *United States v. Buckley,* 452 F.2d 1088 (9th Cir. 1971). See also *Gretter v. United States,* 422 F.2d 315, 318 (10th Cir. 1970).

of any kind that he ever did provide the Board with the location of another residence and he did not testify at all in his own behalf.

The sole argument proffered on this issue below and here is that the Board's Delinquency Report on Austin indicated on its face that there had been vandalism at the Board so that while it was complete in other respects, including his initially given address, the Report failed to indicate such items as "other obvious physical characteristics," "date of registration," "place of registration." Appellant's counsel therefore argues that Austin may have sent in a new address and it may have been destroyed or misplaced because of the vandalism at the Board. The court below properly disposed of the argument by holding that there was insufficient evidence to warrant any such inference. The Government argues that the three missing items, mentioned above, appear on and are normally obtained from the registrant's SSS Form 1 (registration card) which is separately maintained from the rest of his file, while his address would appear in the file which was in evidence. The suggestion is that the cards were the subject of the vandalism but not the files.

 In any event, Austin had the burden of establishing that he notified the Board of any change. He offered no evidence of that and moreover offered no evidence of the time or extent of the vandalism although the clerk of the Board did appear on the morning of the trial and was available for questioning. In the face of this failure of evidence, the inference sought to be drawn by appellant is purely speculative and we find that the court below properly held that Austin had failed to give any notification of an address change.

Appellant's second argument is that the court below erred in finding Austin guilty of violating 50 U.S.C. App. § 462(a) since

there was no proof that he *knowingly* failed to give the Board a new address.

The obligation of the registrant to keep his local board informed of his current address is fixed by 50 U.S.C. App. § 465(b), and the pertinent regulation, the former 32 C.F.R. § 1641.3. Moreover, section 465(a) provides that every person shall be deemed to have notice of the requirements of the title upon Presidential proclamation or other public notice fixing a time for any registration. Aside from this constructive notice provided by the statute, the court below found "the duty [to keep the Board advised of his current address] was brought home to him, clear [sic], given a card which told him what the duty was and all the papers indicated he was aware of that duty." Consequently, the court found "beyond a reasonable doubt that the defendant was made aware of the fact that he had a duty to keep Selective Service Board [sic] advised of the place where he would receive mail."

The court also found that "The defendant had a duty to keep the Selective Service Board advised of a place where mail would reach him. He knowingly failed to fulfill that duty," and that "He knew he had the obligation to give notice and his failure did not result from any inadvertence."

 It cannot therefore be reasonably argued that Judge Weinstein was unaware of the Government's obligation to establish that Austin had knowingly failed to give notice. Section 462(a) explicitly requires that the failure to comply be knowing.[3] It was so found here. Viewing the evidence as we must in the light most favorable to the Government, we cannot sensibly characterize the factual finding of willfulness here to be clearly erroneous.

Appellant relies on a per curiam opinion of the Supreme Court, *Ward v. United States,* 344 U.S. 924, 73 S.Ct. 494, 97 L.Ed. 711 (1953), reversing the circuit court (195

---

**3.** "Any member of the Selective Service System or any other person charged as herein provided with the duty of carrying out any of the provisions of this title . . . or the rules or regulations made or directions given

thereunder, who shall *knowingly* fail or neglect to perform such duty . . . shall . . . be punished . . . ." (emphasis added).

F.2d 441 (5th Cir. 1952)) which had affirmed the defendant's conviction of the same crime charged here. The Court stated:

The record does not support the charge that, during this period, there was deliberate purpose on the part of petitioner not to comply with the Selective Service Act or the regulation issued thereunder.

344 U.S. at 924, 73 S.Ct. at 494, 97 L.Ed. at 712. However, a reading of the circuit court opinion reveals that the defendant there testified on his own behalf, admitted that he had not notified the board of all of his frequent address changes in New York, but had given his employer's address which he relied upon as an address through which he could reasonably be reached. The evidence showed he received mail at that address. (See *United States v. Mostafavi-Kashani,* 469 F.2d 224 (9th Cir. 1972), which distinguishes *Ward* on this ground). Here of course there is no evidence that Austin could reasonably rely on a home address which he had abandoned without any indication to his mother of where he would be, and no proof of any effort to provide the Board with any other information.

*United States v. Neilson,* 471 F.2d 905 (9th Cir. 1973), also relied upon by the appellant, is similarly distinguished. There again the conviction was reversed, because the trial court improperly excluded evidence by the defendant of a telephone call to his father and a letter to his board which the circuit court found relevant as to his knowledge and intent in allegedly failing to keep the board notified of his current address. *Graves v. United States,* 252 F.2d 878 (9th Cir. 1958) is also clearly inapposite. There, a conviction of knowingly failing to report for induction was reversed when the defendant, a beekeeper, testified that he was harvesting honey in fields located distantly (and sensibly) far from home. He was sleeping in a truck at night and was out of touch with everyone but his bees. When he returned home and received his induction notice he appeared at the board the following morning. These cases all present fact situations strikingly different from that encountered here. There is no shred of evidence here that Austin made any effort to contact his Board or that he had any excuse for his failure so to do.

■ Appellant claims that the findings below are inconsistent with a conviction for a knowing failure to keep his Board advised of his address. He relies upon a colloquy between his counsel and Judge Weinstein which actually followed the finding that Austin had knowingly failed to fulfill his duty of advising the Board of a place where mail would reach him; the pertinent part of this discussion is set forth in the margin.[4] Appellant also relies on comments made by Judge Weinstein at Austin's sentencing on

4. The Court: He must have an intent to get in touch with Selective Service. There is an affirmative duty on him. . . .

There's nothing in the record to suggest that this defendant had any thought whatsoever of Selective Service and I agree with you and I so find. His failure did not result so far as the record shows from any deliberate intent on his part to disrupt Selective Service or to keep Selective Service from being in touch with him, but he failed to give notice.

He knew he had the obligation to give notice and his failure did not result from any inadvertence.

Mr. Maher [U. S. Attorney]: I wonder if [I] may mention at this point, your Honor, that back in 1970, there was the drawing of the lottery which was well publicized, the first lottery.

The defendant received a lottery number in 1970. What I'm trying to indicate his duties of Selective Service were very well in everybody's mind not only because of problems in Southeast Asia, but all the other happenings in the area.

The Court: I find the duty was brought home to him, clear, given a card which told him what the duty was and all the papers indicated he was aware of that duty.

Mr. Berman [appellant's counsel]: On that point of the lottery, I don't think there's any proof that he ever received notice of a lottery number.

Mr. Maher: Published in the papers.

The Court: I find beyond a reasonable doubt that the defendant was made aware of the fact that he had a duty to keep Selective Service Board advised of the place where he would receive mail.

He may ultimately have forgotten about that duty but I don't think that has any impact here.

November 7, 1975; these too are set forth insofar as pertinent.[5]

We note that the findings here were oral and neither the appellant nor the Government accepted the judge's invitation to submit written findings. We see no inconsistency between the conviction and the findings that there was nothing *in the record* to establish that Austin had given any thought about Selective Service or that he intended to disrupt or thwart its processes; the basic fact remains that he failed to give notice and proffered no excuse or no evidence of any attempt to get in touch with his Board. On the record before the court the inference that he knowingly failed to give a new address, regardless of his motive, is sufficient to sustain the conviction. *United States v. Cashion*, 492 F.2d 42 (5th Cir. 1974); *United States v. Buckley, supra; United States v. Couming, supra; Gretter v. United States, supra; United States v. Williams*, 378 F.Supp. 159 (S.D.N.Y.1973).

Moreover, we have found no case where a conviction on a record such as this, where there was a finding of failure to provide a proper address and no evidence of excuse, was reversed by an appellate court.

Affirmed.

---

5. The sentencing occurred some two weeks after Austin was found guilty on Count III of the indictment. The court suspended sentence and placed Austin on probation, noting: "In view of the defendant's age, the lack of any prior record and the fact that commission of the crime appears to have been due to emotional, family problems rather than a desire to flout the national law." Aside from the fact that the court was obviously sympathetic to the plight of the defendant and that the comment was made post facto, we find no legal significance in the comment. While it may appear that Austin did not desire to flout the law, for the reasons already mentioned and recognized by the court below in its findings, Austin's motives are not germane. See, e. g., *United States v. Maciel*, 469 F.2d 718, 721 (9th Cir. 1972), cert. denied, 411 U.S. 918, 93 S.Ct. 1556, 36 L.Ed.2d 311 (1973); *United States v. Couming*, 445 F.2d 555, 557 (1st Cir.), cert. denied, 404 U.S. 949, 92 S.Ct. 291, 30 L.Ed.2d 266 (1971).