leave intact all those portions of the law which were not plainly void.

4. The decision does not recognize "necessity" or extra-constitutional legislative war-powers or the special plea of patriotic motives in construing the organic law.

5. It is a happy circumstance that the decision guards one of the oldest and most important of constitutional rights, that of trial by a real jury.

6. The decision, though meeting with some opposition, was ratified by a legislature fresh from the people.

7. It had its influence outside of New Jersey, being cited in the appeal by Gouverneur Morris to the Pennsylvania legislature five years after it was rendered. This appeal was published in Philadelphia, then the central city of the Union, where Congress had had its sessions and where the Federal Convention two years later was to assemble.[27]

8. It must have had a value in preparing for the special duty of formally proposing the principle, Brearly, the Chief Justice, who rendered the decision; Paterson, the Attorney-General, and Livingston, the Governor, the three Jerseymen who in the Federal Convention gave form and name and support to the "Jersey plan."

9. To the "New Jersey plan" is due the formal proposal and therefore, in large part, in due time and by due process, the final acceptance of this principle of judicial control in our legal system.

## UNITED STATES v. BOYCE MOTOR LINES, Inc.
### Cr. No. 330–49.

United States District Court
D. New Jersey.
June 15, 1950.

27. The decisions in the case of Trevett v. Weeden, in Rhode Island, 1786, and of Bayard v. Singleton, in North Carolina, 1787, both involving more or less the constitutional right of a trial by jury, may have found some support in the New Jersey case of Holmes v. Walton, of 1780. A desire to compliment the authors of those decisions by imputing to them the possession of information sufficient to include a knowledge of this case in a sister state would perhaps warrant such an assumption. Lack of historical proof alone prevents the present writer from showing this courtesy to their memory.

It may be proper, however, to add, by way of further conjecture, that Gen. James M. Varnum, who was the learned counsel in the case of Trevett v. Weeden, and who afterwards published a pamphlet giving the history of the case, was a member of the Congress of 1780 and attended the sessions then held in Philadelphia. The case of Holmes v. Walton, which had just been decided, and which was stirring the interest of the people of New Jersey, could scarcely have failed to attract the attention of Varnum. Furthermore, a colleague of Varnum in the Congress of 1780 was William Churchill Houston, a delegate from New Jersey and in 1781 the clerk of its Supreme Court; but, so far as the present writer is concerned, anything beyond this circumstance is pure conjecture.

Charles J. Tyne, Asst. U. S. Atty., Newark, N. J., for Government.

Joseph C. Glavin, Jersey City, N. J., for defendant.

SMITH, District Judge.

The indictment in this case contains six counts, each of which charges the defendant with a violation of certain of the regulations promulgated by the Interstate Commerce Commission pursuant to Section 835 of Title 18 United States Code Annotated. The defendant moves to dismiss the indictment and urges in support of the motion several grounds herein discussed.

### Statute

"The Interstate Commerce Commission shall formulate regulations for the safe transportation within the limits of the jurisdiction of the United States of explosives and other dangerous articles, including flammable liquids, flammable solids, oxidizing materials, corrosive liquids, compressed gases, and poisonous substances, which shall be binding upon all common carriers engaged in interstate or foreign commerce which transport explosives or other dangerous articles by land, and upon all shippers making shipments of explosives or other dangerous articles via any common carrier engaged in interstate or foreign commerce by land or water.

"The commission, of its own motion, or upon application made by any interested party, may make changes or modifications in such regulations, made desirable by new information or altered conditions.

"Such regulations shall be in accord with the best-known practicable means for securing safety in transit, covering the packing, marking, loading, handling while in transit, and the precautions necessary to determine whether the material when offered is in proper condition to transport.

\*　　\*　　\*　　\*　　\*　　\*

"Whoever knowingly violates any such regulation shall be fined not more than $1,000 or imprisoned not more than one year, or both; and, if the death or bodily injury of any person results from such violation, shall be fined not more than $10,000 or imprisoned not more than ten years, or both." 18 U.S.C.A. § 835.

### Counts One, Three And Five

■ These counts were apparently intended to charge violations of the following regulation: "Drivers of motor vehicles transporting any explosive, inflammable liquid, inflammable compressed gas, or poisonous gas shall avoid, *SO FAR AS PRACTICABLE,* and, *WHERE FEASIBLE,* by prearrangment of routes, driving into or through congested thoroughfares, places where crowds are assembled, street car tracks, tunnels, viaducts, and dangerous crossings." (Emphasis by the Court). 49 C.F.R. 238, 1949 Ed., Section 197.1(b).

· The defendant contends that the quoted regulation is invalid because of its failure to define an "ascertainable standard of guilt." We agree with this contention. The regulation clearly imposes upon the "drivers of motor vehicles" the duty to avoid "congested thoroughfares, places where crowds are assembled, street car tracks, tunnels, viaducts, and dangerous crossings," only *"SO FAR AS PRACTICABLE,* and, *WHERE FEASIBLE."* The duty is not absolute but is limited; it must be discharged only so far as practicable and where feasible. It is our opinion that these very terms are so vague and indefinite as to make the standard of guilt conjectural. Whether or not a particular course of conduct is practicable may depend, as it frequently does, on individual judgment; that which seems practicable to one may not seem practicable to another.

■ It was held by the Supreme Court in the case of Connally v. General Construction Co., 269 U.S. 385, at page 391, 46 S.Ct. 126, at page 127, 70 L.Ed. 322: "That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law; and a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." It is further stated. in the opinion of the Court, 269 U.S. at page 393, 46 S.Ct. at page 128: "A criminal statute cannot rest upon an uncertain foundation. The crime, and the elements constituting it, must be so clearly expressed that the ordinary person can intelligently choose, in advance, what course it is lawful for him to pursue." See also United States v. Cohen Grocery Co., 255 U.S. 81, 41 S.Ct. 298, 65 L.Ed. 516, 14 A.L.R. 1045; Lanzetta v. State of New Jersey, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888; Winters v. People of State of New York, 333 U.S. 507, 68 S.Ct. 665, 92 L.Ed. 840; but see

United States v. Alford, 274 U.S. 264, 47 S.Ct. 597, 71 L.Ed. 1040; Sproles v. Binford, 286 U.S. 374, 52 S.Ct. 581, 76 L.Ed. 1167; United States v. Ragen, 314 U.S. 513, 62 S.Ct. 374, 86 L.Ed. 383; United States v. Sullivan, 332 U.S. 689, 68 S.Ct. 331, 92 L.Ed. 297. It is our opinion that the four cases in the latter group are distinguishable but we see no reason to discuss the distinctions.

The views expressed by the Supreme Court in the case of Kraus & Bros. v. United States, 327 U.S. 614, 66 S.Ct. 705, 90 L.Ed. 894, are apposite. The Court, passing on the validity of a regulation promulgated by the Price Administrator pursuant to the Emergency Price Control Act, 50 U.S.C.A.Appendix, § 901 et seq., stated, 327 U.S. at page 621, 66 S.Ct. at page 707: "This delegation to the Price Administrator of the power to provide in detail against circumvention and evasion, as to which Congress has imposed criminal sanctions, creates a grave responsibility. In a very literal sense the liberties and fortunes of others may depend upon his definitions and specifications regarding evasion. Hence to these provisions must be applied the same strict rule of construction that is applied to statutes defining criminal action. In other words, the Administrator's provisions must be explicit and unambiguous in order to sustain a criminal prosecution; they must adequately inform those who are subject to their terms what conduct will be considered evasive so as to bring the criminal penalties of the Act into operation. * * * The dividing line between unlawful evasion and lawful action cannot be left to conjecture. The elements of evasive conduct should be so clearly expressed by the Administrator that the ordinary person can know in advance how to avoid an unlawful course of action." These principles are equally applicable to regulations promulgated by the Commission.

We are fully aware that the disaster which led to the present prosecution emphasized the need for adequate regulations, but it is not within our power to make them. It was further stated in the case of Kraus & Bros. v. United States, 327 U.S. at page 622, 66 S.Ct. at page 708: "A

prosecutor in framing an indictment, a court in interpreting the Administrator's regulations or a jury in judging guilt cannot supply that which the Administrator failed to do by express word or fair implication. Not even the Administrator's interpretations of his own regulations can cure an omission or add certainty and definiteness to otherwise vague language. The prohibited conduct must, for criminal purposes, be set forth with clarity in the regulations and orders which he is authorized by Congress to promulgate under the Act. Congress has warned the public to look to that source alone to discover what conduct is evasive and hence likely to create criminal liability." It should be apparent that we cannot, under the pretense of interpretation, give certainty to the regulation so as to make it meet the obvious need.

It should be further observed that the offense defined in the regulation is malum prohibitum, and intent is not an element of the offense as defined. It is for this further reason that the standard of guilt should be prescribed with a reasonable degree of certainty so that the ordinary person can intelligently determine what conduct is within the prohibition of the regulation.

There are additional grounds urged by the defendant in support of the motion. It seems unnecessary to consider these grounds, but we deem it advisable to discuss them. A discussion may be of some assistance and guidance in the future prosecution of cases of this character.

The defendant further contends that these counts fail to charge an offense. This contention is based solely upon the argument that the particular regulation is directed only to the "drivers of motor vehicles" engaged in the transportation of explosives and other materials. The argument is sound but it does not follow therefrom that others, for example the employers of drivers, may not be prosecuted for violations of the regulation. The regulation is, by its express language, applicable to the "drivers of motor vehicles," but others who aid, abet, counsel, command,

induce or procure the commission of the offense therein defined, are principals and punishable as such. 18 U.S.C.A. § 2(a); see Coffin v. United States, 162 U.S. 664, 16 S.Ct. 943, 40 L.Ed. 1109; United States v. Johnson, 319 U.S. 503, 63 S.Ct. 1233, 87 L.Ed. 1546; United States v. Marinelli, 3 Cir., 142 F.2d 446. The statute, 18 U.S. C.A. § 2(b), also provides: "Whoever causes an act to be done, which if directly performed by him would be an offense against the United States, is also a principal and punishable as such." This contention is therefore not sustainable.

■■ The defendant urges as an additional ground that these counts of the indictment are ambiguous and duplicitous. We agree that the language of these counts is ambiguous but we cannot agree that they are duplicitous. An indictment must charge an offense with a reasonable degree of certainty so that the accused may be informed as to the nature of the charge made against him. The purpose of this requirement is to enable the accused to prepare and make his defense and thereafter to plead the judgment as a bar to a subsequent prosecution for the same offense. These principles are so well established that we see no reason to cite cases in support of them.

■ These counts of the indictment fail to meet the basic requirements. It is suggested by the United States Attorney that some of the language is mere surplusage. We are inclined to concede that it probably is, but it is this surplus language that makes the counts of the indictment ambiguous. The surplusage will ordinarily not affect an indictment and may be disregarded, but where, as here, it creates an ambiguity, it should not be disregarded. We are no longer bound by the rigid rules of common law pleading but we have not abandoned the basic principles of good pleading. The present Federal Rules of Criminal Procedure require nothing more than "a plain, concise and definite written statement of the essential facts constituting the offense charged." Rule 7(c), 18 U.S. C.A. There is no reason why this rule cannot be followed.

### Second, Fourth And Sixth Counts

■ These counts charge violations of the following regulation: "Every motor vehicle transporting any quantity of dangerous explosives, class A, poison gas, class A, or radioactive material, poison class D requiring red radioactive materials label, and every motor vehicle transporting 2500 pounds or more of explosives, class B, inflammable liquids, corrosive liquids, compressed gas and tear gas, or 5000 pounds or more of two or more articles of these groups shall be marked or placarded on each side and rear with a placard or lettering in letters not less than three inches high on a contrasting background." There follows a brief description sufficient to identify the required placard. 49 C.F.R. 7025, 1947 Sup., Sec. 823(a).

The defendant moves to dismiss these counts on the ground that their language is vague, indefinite and ambiguous. This ground is without merit. The language of these counts is not entirely free of ambiguity but it is sufficiently plain and concise so as to meet the requirements hereinabove discussed. There can be no doubt as to the nature of the charges therein made against this defendant.

### All Counts

■ The principal ground urged by the defendant in support of the motion is that there is inherent in the statute an unlawful delegation by Congress of legislative power, in violation of the Constitution. This ground is founded upon the usual argument that the Act fails to prescribe adequate standards for the guidance of the Commission. It is our opinion that this ground and the argument advanced in support of it are without merit. Buttfield v. Stranahan, 192 U.S. 470, 24 S.Ct. 349, 48 L.Ed. 525; Sunshine Anthracite Coal Co. v. Adkins, 310 U.S. 381, 60 S.Ct. 907, 84 L.Ed. 1263; Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834; American Power & Light Co. v. Securities & Exchange Commission, 1 Cir., 141 F.2d 606, 625, and other cases therein cited. It is our opinion that the standards prescribed by the Act, considered in the light of its obvious purpose and the decla-

ration of policy contained in the preamble of the Act of September 18, 1940, c. 722, Title 1, § 1, 54 Stat. 899, 49 U.S.C.A. preceding section 1, satisfy the constitutional requirements and afford an adequate guide to the Commission.

The statement by the Supreme Court in the case of Sunshine Anthracite Coal Co., supra, 310 U.S. at page 398, 60 S.Ct. at page 915; would seem to be particularly applicable here. It was therein stated: "In the hands of experts the criteria which Congress has supplied are wholly adequate for carrying out the general policy and purpose of the Act. To require more would be to insist on a degree of exactitude which not only lacks legal necessity but which does not comport with the requirements of the administrative process. Delegation by Congress has long been recognized as necessary in order that the exertion of legislative power does not become a futility." It cannot be denied that the Interstate Commerce Commission is a competent and experienced administrative agency.

### Conclusion

Counts one, three and five will be dismissed for the reasons herein stated. The motion addressed to counts two, four and six will be denied for the reasons herein stated. The United States Attorney will prepare and submit to the Court a proper order.