JOSEPH ARMONDO AND MARION ARMONDO, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Armondo v. Commissioner
Docket No. 2556-79.
United States Tax Court
T.C. Memo 1985-146; 1985 Tax Ct. Memo LEXIS 483; 49 T.C.M. (CCH) 1055; T.C.M. (RIA) 85146; March 27, 1985. George B. Collins and Sidney R. Berger, for the petitioners. John J. Morrison and Robert F. Simon, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined deficiencies in petitioners' Federal income tax as follows: Year
Amount
1970
$23,295.03
1971
3,805.97
1972
12,305.42
1973
17,546.27
The Commissioner also determined additions to tax under section 6653(b)[1] with respect to petitioner Joseph Armondo as follows: Year
Amount
1970
$11,647.52
1971
1,902.99
1972
6,152.71
1973
8,773.14
In motions filed July 29, 1982, respondent *484 moved to sever several issues in this case and in Liberty Asphalt Corporation v. Commissioner, docket No. 19934-80 (Liberty) and Edwin L. Frederick and Miriam E. Frederick v. Commissioner, docket No. 19935-80 (Frederick) and to consolidate these severed issues for the purposes of trial, briefing and opinion. This Court, upon hearing and argument of the parties, granted respondent's motion to sever in an order dated September 21, 1982. Further, in the same order, this Court granted respondent's motion to consolidate the severed issues in this case with docket No. 19934-80 (Liberty) and docket No. 19935-80 (Frederick) for purposes of trial. [2]
After concessions and stipulations by the parties, [3] the severed issues for decision are: (1) whether petitioners received unreported income in the amounts determined by the Commissioner for the taxable years in issue from Edwin L. Frederick, Sr., and (2) whether petitioner Joseph Armondo is liable for the additions to tax under section 6653(b) in the amounts determined by the Commissioner for the taxable years in issue. *485 FINDINGS OF FACT Some of the facts have been stipulated. The stipulated facts and accompanying exhibits are so found and incorporated herein by reference. Petitioners, husband and wife for the taxable years in issue, resided in Fox Lake, Illinois, when they filed their petition in this case. Petitioner Joseph Armondo (hereinafter sometimes referred to as "Mr. Armondo") immigrated to the United States at the age of six and never attended school. In 1948, Mr. Armondo and several other individuals constructed and operated a movie theater in Fox Lake, Illinois. By 1950, because of the withdrawal of the other co-owners, Mr. Armondo owned the entire theater and he operated it until he sold it in 1970. During the years that Mr. Armondo was associated with this theater, the theater displayed family oriented movies. Beginning in 1970, the new theater owners began to show films catering to the audience's prurient interests. Prior to 1953, Mr. Armondo also operated a magazine business with over 2,200 dealers and 87 employees. In 1957, Mr. Armondo was elected mayor of Fox Lake and he subsequently completed his initial four-year term. He was defeated in his 1961 re-election bid *486 but regained the office in 1965 for another four-year term. Mr. Armondo was also re-elected mayor in 1969 and 1973. From 1969 through 1974, Mr. Armondo also served as the chairman of the Fox Lake Liquor Commission. The small salaries received by Mr. Armondo while holding these offices were not needed to support his family due to his prior successful business dealings. During his tenure as mayor of Fox Lake, Mr. Armondo had numerous business dealings in his official capacity with local road and paving contractors, including Liberty Asphalt Company, Inc. (hereinafter referred to as "Liberty") and its principal, Edwin L. Frederick, Sr. Although Mr. Armondo received several small holiday gifts from Mr. Frederick and Liberty during his tenure as mayor, he did not receive any cash payments from either Mr. Frederick or Liberty during the taxable years in issue. Albert Smith died on October 8, 1961. During the taxable year 1970, petitioners received income from several sources including the following items: Source
Type
Amount
Sale of residence at
Long-term
$9,757.75
238 Lippincott Lane
Capital Gain
Coleman Contract
Interest
1,525.96
Hallendale, Florida condominium
Rent (net)
1,151.38
Grayslake Outdoor, Ltd. Contract
Interest
161.82
*487 During the taxable year 1970, petitioners paid several deductible items including the following: Type
Amount
State and local general
$1,767.10
sales, real estate,
income personal property
and gasoline taxes
Interest
95.76
During the taxable year 1971, petitioners received income from several sources including the following items: Source
Type
Amount
Hallendale, Florida condominium
Rent (net)
$840.27
Village of Fox Lake funds on
17.46
deposit with Fox Lake State Bank
Village of Fox Lake
100.00
During the taxable year 1971, petitioners paid several deductible items including the following: Type
Amount
State and local general
$1,790.09
sales, real estate,
income, personal property
and gasoline taxes
Interest
1,217.04
Charitable contributions
314.00
During the taxable year 1972, petitioners received income from several sources including the following items: Source
Type
Amount
Hallendale, Florida condominium
Rent (net)
$3,258.36
Village of Fox Lake funds on
2,210.00
deposit with Fox Lake State Bank
Coleman Contract
Interest
748.65
Armondo/G.B.B. Contract
Interest
783.00
Bank adjustment
Interest
6.98
Grayslake Outdoor, Ltd. Contract
Interest
.05
Village of Fox Lake
100.00
*488 During the taxable year 1972, petitioners paid several deductible items including the following: Type
Amount
State and local general
$2,931.66
sales, real estate,
income, personal property
and gasoline taxes
Charitable contributions
894.00
During the taxable year 1973, petitioners received income from several sources including the following items: Source
Amount
Village of Fox Lake
$2,100.00
funds on deposit with
Fox Lake State Bank
Village of Fox Lake
75.00
During the taxable year 1973, petitioners made deductible charitable contributions in the total amount of $606.50. During the taxable years in issue, Mr. Armondo was responsible for collecting all of the necessary financial information for the accurate preparation of petitioners' Federal income tax returns, and forwarding it to their accountant, who actually prepared the returns. Petitioners filed a Form 1040 U.S. Individual Income Tax Return with the Internal Revenue Service for the taxable year 1970. Petitioners elected a married filing jointly status on this Form 1040. Neither petitioner signed this form although the accountant, who prepared the form based upon the information *489 submitted to him by petitioners, did sign it. Although they correctly reported the receipt of several items of income on the Form 1040 filed by petitioners for the taxable year 1970, petitioners did not report the following items of income which they also received during the taxable year: Source
Type
Amount
Sale of residence at
Long-term
$9,757.75
238 Lippincott Lane
Capital Gain
Coleman Contract
Interest
1,525.96
Hallendale, Florida condominium
Rent (net)
1,151.38
Grayslake Outdoor, Ltd. Contract
Interest
161.82
On the Form 1040 filed by petitioners for the taxable year 1970, they claimed numerous itemized deductions including the following: Type
Amount
State and local general
$2,601.59
sales, real estate,
income, personal property
and gasoline taxes
Interest
459.35
Petitioners filed a joint Federal income tax return for the taxable year 1971 with the Internal Revenue Service. On said return, petitioners failed to include the following amounts of income received during that taxable year: Source
Type
Amount
Hallendale, Florida condominium
Rent (net)
$840.27
Village of Fox Lake funds on
17.46
deposit with Fox Lake State Bank
Village of Fox Lake
100.00
*490 On the joint Federal income tax return filed by petitioners for the taxable year 1971, they claimed numberous itemized deductions including the following matters: Type
Amount
State and local general
$2,274.81
sales, real estate,
income, personal property
and gasoline taxes
Interest
1,175.50
Charitable contributions
642.00
Petitioners filed a joint Federal income tax return for the taxable year 1972 with the Internal Revenue Service. On said return, petitioners failed to include the following amounts of income received during that taxable year: Source
Type
Amount
Hallendale, Florida condominium
Rent (net)
$3,258.36
Coleman Contract
Interest
748.65
Armondo/G.B.B. Contract
Interest
783.00
Bank adjustment
Interest
6.98
Grayslake Outdoor, Ltd. Contract
Interest
.05
Village of Fox Lake
100.00
Village of Fox Lake funds on
2,210.00
deposit with Fox Lake State Bank
On the joint Federal income tax return filed by petitioners for the taxable year 1972, they claimed numerous itemized deductions including the following: Type
Amount
State and local general
$3,023.65
sales, real estate,
income, personal property
and gasoline taxes
Interest
1,224.15
Charitable contributions
2,207.00
*491 Petitioners filed a joint Federal income tax return for the taxable year 1973 with the Internal Revenue Service. On said return, petitioners failed to include the following amounts of income received during that taxable year: Source
Amount
Village of Fox Lake
$2,100.00
funds on deposit with
Fox Lake State Bank
Village of Fox Lake
75.00
On the joint Federal income tax return filed by petitioners for the 1973 taxable year, they claimed numerous itemized deductions including the following: Type
Amount
State and local general
$2,292.23
sales, real estate,
income, personal property
and gasoline taxes
Charitable contributions
1,297.50
Interest
739.92
For the taxable year 1970, the Commissioner made the following determinations in computing petitioners' taxable income: (1) he increased their taxable income by the amount of $4,878.88 as the result of their sale of their residence, a capital asset; (2) he increased their interest income by the amount of $1,678.78; (3) he increased their income by the amount of $1,450 as the result of additional payments received from the Village of Fox Lake; (4) he increased their income by the amount *492 of $6,000 as the result of payments received from Edwin L. Frederick, Sr., a corporate officer of Liberty; (5) he increased their income by $1,151.38 as the result of net income received from the rental of their Hallendale, Florida, condominium; (6) he increased their income by the amount of $464.23 as the result of their use of Village of Fox Lake funds on deposit with the Fox Lake State Bank; (7) he disallowed $834.49 of claimed itemized deductions for taxes paid because of alck of substantiation; and (8) he disallowed $363.59 of claimed itemized deductions for interest paid because of lack of substantiation. For the taxable year 1971, the Commissioner made the following determinations in computing petitioners' taxable income: (1) he increased their income by $1,960 as the result of additional payments received from the Village of Fox Lake; (2) he increased their income by $6,000 as the result of payments received from Edwin L. Frederick, Sr., a corporate officer of Liberty; (3) he increased their income by $840.27 as the result of net income received from the rental of their Hallendale, Florida, condominium; (4) he increased their income by the amount of $1,931.87 as the result *493 of their use of Village of Fox Lake funds on deposit with the Fox Lake State Bank; (5) he disallowed $484.72 of claimed itemized deductions for taxes paid because of lack of substantiation; (6) he increased their itemized deductions for interest paid by the amount of $41.54; and (7) he disallowed $328 of claimed charitable contributions because of lack of substantiation. For the taxable year 1972, the Commissioner made the following determinations in computing petitioners' taxable income: (1) he increased their interest income by the amount of $1,538.68; (2) he increased their income by the amount of $2,069.95 as the result of additional payments received from the Village of Fox Lake; (3) he increased their income by the amount of $6,000 as the result of payments received from Edwin L. Frederick, Sr., a corporate officer of Liberty; (4) he increased their income by the amount of $3,258.36 as the result of net income received from the rental of their Hallendale, Florida, condominium; (5) he increased their income by the amount of $6,961.19 as the result of their use of Village of Fox Lake funds on deposit with the Fox Lake State Bank; (6) he disallowed $91.99 of claimed itemized deductions *494 for taxes paid because of lack of substantiation; (7) he disallowed $1,224.15 of claimed itemized deductions for interest paid because of lack of substantiation; and (8) he disallowed $1,313 of claimed charitable contributions because of lack of substantiation. For the taxable year 1973, the Commissioner made the following determinations in computing petitioners' taxable income: (1) he increased their taxable income by the amount of $4,572.86 as the result of additional payments received from the Village of Fox Lake; (2) he increased their taxable income by the amount of $5,000 as the result of payments received from Edwin L. Frederick, Sr., a corporate officer of Liberty; (3) he increased their income by the amount of $10,972.52 as the result of their use of Village of Fox Lake funds on deposit with the Fox Lake State Bank; (4) he decreased their income by the amount of $48.63 as the result of total interest income received during the year; (5) he decreased their income by the amount of $135.18 as the result of net income received from the rental of their Hallendale, Florida, condominium; (6) he disallowed $739.92 of claimed itemized deductions for interest paid because of lack *495 of substantiation; (7) he disallowed $691 of claimed charitable contributions because of lack of substantiation; and (8) he allowed $368.46 of additional itemized deductions for taxes paid. Finally, the Commissioner determined that all or part of the underpayments of tax for the taxable years 1970, 1971, 1972 and 1973 were due to fraud on the part of Mr. Armondo and imposed additions to tax under section 6653(b) in the amounts set forth above. OPINION The first issue for decision is whether petitioners received payments from Edwin L. Frederick, Sr., a corporate officer of Liberty, in the amounts of $6,000 for each of the taxable years 1970, 1971 and 1972 and $5,000 in the taxable year 1973, as determined by the Commissioner in the notice of deficiency mailed to petitioners. The Commissioner's determinations are presumptively correct, Welch v. Helvering,290 U.S. 111, 115 (1933), and petitioners bear the burden of proving them to be erroneous. Rule 142(a). Although Mr. Armondo admits receiving several small holiday gifts from Mr. Frederick and Liberty during his tenure as mayor of Fox Lake, he adamantly denies receiving any cash payments from either Mr. Frederick *496 or Liberty during the taxable years in issue. In making his determinations that petitioners received cash payments from Mr. Frederick and Liberty during the taxable years in issue, the Commissioner relied upon Mr. Frederick's statements to authorities during his cooperation with their investigations of alleged bribery between road and paving contractors and local officials in several northern Chicago suburbs during the early 1970's. In his opening statement at trial, however, respondent now contends that the cash payoffs did not take place and that his principal witness, Mr. Frederick, is not worthy of belief. [4]
After observing Mr. Frederick's demeanor while testifying and examining his testimony in light of the entire record, we agree with respondent that Mr. Frederick's testimony is not worthy of belief. Mr. Frederick testified that Albert Smith introduced him to Mr. Armondo in 1969. Albert Smith, however, died on October 8, 1961. Mr. Frederick's testimony also frequently contradicted his responses to pre-trial interrogatories and *497 his prior written statements made to authorities during their investigation of alleged bribery between road and paving contractors and suburban Chicago officials. Finally, Mr. Frederick's claim that Mr. Armondo regularly received the cash payments in issue during the day in the parking lot of the Fox Lake movie theater that he formerly owned seems quite ludicrous. This would require the town's then current mayor to receive the payoffs in broad daylight in the parking lot of the town's "adult" theater. Given that we agree with respondent that Mr. Frederick's testimony is not worthy of belief, and that respondent's bribery receipt case against petitioners is primarily based upon Mr. Frederick's testimony, we hold that petitioners have met their burden of proving that they did not receive any cash payments from Mr. Frederick or Liberty during the taxable years in issue. Rule 142(a). The remaining issue for decision is whether petitioner Joseph Armondo is liable for the additions to tax under section 6653(b) for fraud. Although the Commissioner determined that Mr. Armondo was liable for the additions to tax under section 6653(b) for the taxable years 1970, 1971, 1972 and 1973, *498 the parties have agreed that Mr. Armondo's Federal income tax returns for the taxable years 1971 and 1973 were not fraudulent. [5] The remaining years in issue, therefore, are the taxable years 1970 and 1972. The burden of proving fraud is on respondent, and he must do so by clear and convincing evidence. Rule 142(b); sec. 7454(a); Stone v. Commissioner,56 T.C. 213, 220 (1971). This burden is met if it is shown that the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead or otherwise prevent the collection of taxes and that there is an underpayment of tax. Stoltzfus v. United States,398 F.2d 1002, 1004 (3d Cir. 1968), cert. denied 393 U.S. 1020 (1969); Rowlee v. Commissioner,80 T.C. 1111, 1123 (1983); Acker v. Commissioner,26 T.C. 107, 112 (1956). When fraud is determined, as in the instant case, for *499 more than one taxable year, respondent must show that some part of an underpayment was due to fraud for each taxable year for the corresponding addition to tax to be up held. Professional Services v. Commissioner,79 T.C. 888, 930 (1982); Otsuki v. Commissioner,53 T.C. 96, 105 (1969). The existence of fraud is a question of fact to be resolved upon consideration of the entire record. Rowlee v. Commissioner,supra at 1123; Gajewski v. Commissioner,67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud will never be presumed. Beaver v. Commissioner,55 T.C. 85, 92 (1970). Since fraud can seldom be established by direct proof, the requisite intent may be inferred from a showing by respondent that petitioner's conduct was intended to conceal, mislead or otherwise prevent the collection of taxes that petitioner knew or believed he owed. Stoltzfus v. United States,supra;Professional Services v. Commissioner,supra.Further, as direct evidence of fraudulent intent is seldom available, we may draw reasonable *500 inferences from the conduct of the taxpayer and the surrounding circumstances. Grosshandler v. Commissioner,75 T.C. 1, 19 (1980). Finally, as respondent's determination of fraud requires an inquiry into the taxpayer's frame of mind, a single act or omission seldom demonstrates the necessary fraudulent intent. Rather, the existence of the requisite fraudulent intent must generally be determined by surveying a taxpayer's entire course of conduct. Stone v. Commissioner,supra at 223-224; Stratton v. Commissioner,54 T.C. 255, 284 (1970). After thoroughly reviewing the entire record, we are convinced that respondent has affirmatively shown by clear and convincing evidence that petitioner Joseph Armondo fraudulently understated his taxable income for the taxable years 1970 and 1972. Mr. Armondo was responsible for collecting the necessary financial information for the accurate preparation of petitioners' Federal income tax returns and forwarding it to his accountant, who actually prepared the returns for the taxable years in issue. For the taxable year 1970, petitioners omitted the following items of income from the Form 1040 *501 submitted to the Internal Revenue Service: Item
Amount
Gain (long-term capital)
$9,757.75
on sale of residence at
238 Lippincott Lane
Net rental income from
1,151.38
Hallendale, Florida
condominium
Interest on Coleman
1,525.96
Contract
Interest on Grayslake
161.82
Outdoor, Ltd. Contract
Total
$12,596.91
For the taxable year 1972, petitioners omitted the following items of income from their joint Federal income tax return: Item
Amount
Net rental income from
$3,258.36
Hallendale, Florida
Condominium
Income arising from use of
2,210.00
Village o Fox Lake funds
on deposit with Fox Lake
State Bank
Interest on Coleman Contract
748.65
Interest on Armondo/G.B.B.
783.00
Contract
Additional payment from
100.00
Village for Fox Lake
Bank adjustment regarding
6.98
interest
Total
$7,106.99
Although the omission of a single item of income for a single tax year, standing alone, is not sufficient to establish fraud, Stone v. Commissioner,22 T.C. 893, 904 (1954), the consistent understatement of substantial amounts of income is strong evidence of fraud. Merritt v. Commissioner,301 F.2d 484, 487 (5th Cir. 1962); *502 Teitelbaum v. Commissioner,294 F.2d 541, 547 (7th Cir. 1961), affg. a Memorandum Opinion of this Court; Vannaman v. Commissioner,54 T.C. 1011, 1018 (1970). In the instant case, during the taxable years in issue, petitioners consistently failed to report substantial amounts of income from their Hallendale, Florida, condominium and the Coleman contract, in addition to omitting other recurring and substantial amounts of income. Additional affirmative evidence of Mr. Armondo's fraudulent intent during the taxable years in issue arises from petitioners' consistent overstatement of allowable deductions. United States v. Ragen,314 U.S. 513 (1942); Blackwell v. United States,244 F.2d 423 (8th Cir. 1957). For the taxable year 1970, petitioners overstated the deductions claimed on their Form 1040 in the following amounts: Item
Amount of Overstatement
State and local general
$834.49
sales, real estate,
income, personal
property and gasoline
tax
Interest expense
363.59
For the taxable year 1972, petitioners overstated the deductions claimed on their joint Federal income tax return in the following *503 amounts: Item
Amount of Overstatement
Interest expense
$1,224.15
Charitable contributions
1,313.00
State and local general
91.99
sales, real estate,
income, personal
property and gasoline
taxes
The pattern of consistently and substantially overstating allowable deductions on petitioners' joint Federal income tax returns also continued during taxable years in which the fraud addition to tax is not currently before this Court. Mr. Armondo's only explanation for the consistent omission of substantial amounts of income and substantial overstatements of allowable deductions for the taxable years in issue was his claim that he collected all of the necessary financial information for the accurate preparation of petitioners' Federal income tax returns and gave this data to his accountant who prepared petitioners' returns as filed. Petitioners' accountant did not testify at trial and no explanation for his absence was offered. Had petitioners' accountant or some other individual been responsible for the pattern of consistent and substantial omissions and overstatements of items on petitioners' Federal income tax returns for the years in issue, it intuitively *504 follows that Mr. Armondo would desire to place evidence corroborating this scenario into the record. When the absence of such evidence is viewed in light of Mr. Armondo's claim that he collected all of the necessary financial information for the accurate preparation of petitioners' Federal income tax returns and gave this data to his accountant who prepared the returns as filed, it logically follows that Mr. Armondo was actively involved in petitioners' consistent omissions of substantial amounts of income and substantial overstatements of allowable deductions for the years in issue. Mr. Armondo's lack of any formal education does not require a contrary result with respect to the fraud additions to tax. Although a taxpayer's limited formal education, together with other relevant facts, can be indicative of the absence of any fraudulent intent even in the presence of substantial and consistent understatements of income, [6] Mr. Armondo's extensive and successful business and government experience prior to the taxable years in issue dispel any reasonable notion that the taxable income understatements were not the result of fraudulent intentions. Prior to 1953, Mr. Armondo successfully *505 operated a magazine business with 2,200 dealers and 87 employees. He also operated a movie theater in Fox Lake for over 20 years. Further, prior to the taxable years in issue, Mr. Armondo had completed two four-year terms as mayor of Fox Lake which impressed upon him the need for an accurate and complete accounting of both the receipt and expenditure of funds, whether they be the public's tax revenues or his personal finances. Finally, the foregoing analysis is confirmed by our observation of Mr. Armondo's demeanor during trial. Although lacking formal education, Mr. Armondo impressed us as a successful, experienced and calculating businessman. Accordingly, the Commissioner's determination that Mr. Armondo is liable for the fraud additions to tax for the taxable years 1970 and 1972 is sustained. Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the taxable years in issue, and all rule references are to this Court's Rules of Practice and Procedure.↩
2. See Liberty Asphalt Corporation v. Commissioner,T.C. Memo. 1985-145↩, filed this date.
3. Prior to trial, the parties entered into the following stipulations of issues: (16) The parties agree that regardless of the Court's determinations of fraud or of whether or not petitioners received unreported income from Edwin L. Frederick, Sr., the statute of limitations does not bar the deficiencies for petitioners' taxable years 1970 and 1972 and that for all other purposes, the document filed as petitioners' joint return for 1970 will be so treated. (17) The parties agree that unless the Court determines that petitioners received at least $2,499.53 during 1971 and $1,358.68 during 1973 in unreported income from Edwin L. Frederick, Sr., or that the returns for those years were fraudulent, the deficiencies for those years are barred by the statute of limitations. However, if the Court determines that petitioners received at least those amounts during those years from Edwin L. Frederick, Sr., or that the returns for those years were fraudulent, the deficiencies for those years are not barred by the statute of limitations. The parties hereto agree that petitioners' returns for said years were not fraudulent unless the Court determines that petitioners received unreported income from Edwin L. Frederick, Sr.↩
4. No explanation was offered for respondent's continued prosecution of this issue in light of his strong doubts concerning this matter.↩
5. The settlement of the fraud additions to tax for the taxable years 1971 and 1973 arises due to our holding that petitioners did not receive unreported income from Edwin L. Frederick, Sr., and the parties' stipulations as set forth in note 2, infra.↩
6. Clayton v. Commissioner,T.C. Memo. 1948-112↩.