**UNITED STATES of America**

v.

**Ronald ROLLINS, Defendant.**

**Crim. No. 88–10033.**

United States District Court,
D. Idaho.

Feb. 10, 1989.

Maurice O. Ellsworth, U.S. Atty., George Breitsameter, Asst. U.S. Atty., D. Idaho, Boise, Idaho, for U.S.

R. Brad Masingill, Weiser, Idaho, for Rollins.

## MEMORANDUM DECISION

CALLISTER, District Judge.

The Court has before it an appeal from a criminal conviction imposed by the United States Magistrate. The Court heard oral argument on February 6, 1989, and the matter is now ready to be resolved. While the Magistrate's factual findings must be upheld unless clearly erroneous, his application of those facts to the law is reviewed *de novo*. *See United States v. Feldman,* 788 F.2d 544 (9th Cir.1966), *cert. denied* 479 U.S. 1067, 107 S.Ct. 955, 93 L.Ed.2d 1003 (1987).

This case began on May 21, 1988, when the defendant, Ronald Rollins, applied a mixture of registered pesticides (Furadan and Di–Syston) to approximately fifty acres of seed alfalfa growing on his farm at West Lake Island in the Snake River between Oregon and Idaho. Thereafter, a flock of geese alighted on the field, ate the alfalfa, and died from ingestion of the pesticides. Rollins was charged with a violation of Title 16, United States Code, §§ 703 and 707, the Migratory Bird Treaty Act (MBTA) and also with violation of Title 7, United States Code, § 136j(a)(2)(G), the Federal Insecticide, Fungicide, and Rodenticide Act. This latter charge was dismissed by the Magistrate in response to pretrial motions, and the case went to trial on October 11–12, 1988. The Magistrate then issued a detailed and well-written memorandum decision on October 19, 1988, finding the defendant guilty of violating the MBTA. In that decision, the Magistrate identified the "primary fact in dispute at the trial" as "whether or not the island was a known feeding area for geese." *Id.* at p. 4. The Magistrate ultimately concluded that "a reasonable person would have been placed on notice that alfalfa grown on West Lake Island in the Snake River would attract and be consumed by migratory birds. *See* Memorandum Decision filed October 19, 1988, at p. 4. But in reaching this conclusion the Magistrate also found that the defendant had used Furadan on his alfalfa fields in the past and "never experienced a problem with birds." *Id.* at p. 3. The Magistrate found that other farmers in the area could not recall "any prior incidences where large numbers of geese had been killed following a pesticide application." *See* p. 3. These pesticides had been used "by the farming community in the Weiser area for a number of years without major incident." *Id.* at p. 14.

The defendant Rollins did not apply the pesticide in a reckless manner. *Id.* at p. 14. Indeed, Rollins and a farm helper "inspected the field during the spraying and there was no sign of geese feeding on the alfalfa." *Id.* at p. 4. Rollins applied the chemicals "in the recommended quantities at the appropriate time." *Id.* at p. 14. Once the pesticides were applied, "there is no effective way to keep them [the geese] out of their [the farmers'] fields...." *Id.* at p. 4.

Neither party has challenged the Magistrate's factual findings as being clearly erroneous. Given those facts, can the MBTA be constitutionally applied to defendant

Rollins? That is a question of law which must be reviewed *de novo*, and the Court will now turn its attention to that review.

The MBTA provides in pertinent part as follows:

### § 703. Taking, killing, or possessing migratory birds unlawful.

Unless and except as permitted by regulations made as hereinafter provided, it shall be unlawful at any time, by any means or in any manner, to pursue, hunt, take, capture, [or] kill ... any migratory bird....

As the Magistrate and other courts have accurately pointed out, the MBTA is a strict liability statute without a scienter requirement. *Id.* at pp. 8–14. *See also United States v. FMC Corp.*, 572 F.2d 902 (2nd Cir.1978); *United States v. Corbin Farm Service*, 444 F.Supp. 510 (D.Cal. 1978); *United States v. St. Pierre*, 578 F.Supp. 1424 (W.D.S.D.1983). Thus, a homeowner could be pursued under the MBTA if a flock of geese crashed into his plate-glass window and were killed. An airplane pilot could be prosecuted if geese were sucked into his jet engines. A farmer like Rollins is exposed to sanctions because he tended his crops in the same manner as other area farmers. These examples make one queasy about the reach of strict liability criminal statutes. Certainly the lack of any intent requirement does not instantly doom the statute: Many strict liability statutes exist. But the lack of scienter does make a statute prone to vagueness, and a vague criminal statute will not withstand constitutional scrutiny.

Under our system of government, "which is designed to foster individual liberty and restrict the arbitrary exertion of governmental authority," *United States v. Stenberg*, 803 F.2d 422, 435 (9th Cir.1986), a criminal statute must define the offense with "sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461

U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed. 2d 903 (1983). "[N]o individual [may] be forced to speculate at peril of indictment whether his conduct is prohibited." *Dunn v. United States*, 442 U.S. 100, 99 S.Ct. 2190, 60 L.Ed.2d 743 (1979). Any statute which does not give fair notice as to what constitutes illegal conduct so that an individual may conform his conduct to the law violates the first essential of due process of law. *See Connally v. General Construction Co.*, 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926).[1]

The Supreme Court has long recognized that "the constitutionality of a vague statutory standard is closely related to whether that standard incorporates a requirement of *mens rea*." *See Colautti v. Franklin*, 439 U.S. 379, 395, 99 S.Ct. 675, 685, 58 L.Ed.2d 596 (1979). Such statutes could become "little more than a trap for those who act in good faith." *Id.* at p. 395, 99 S.Ct. at p. 685 (quoting from *United States v. Ragen*, 314 U.S. 513, 62 S.Ct. 374, 86 L.Ed. 383 (1942)). That is precisely what has happened in this case: The MBTA has trapped a farmer who acted in good faith. The Magistrate's factual findings portray Rollins as a man who should have known that geese would feed in his field, but whose experience established that the spraying of pesticides posed no danger to the geese. Although the pesticides contained a warning label, Rollins and his neighbors had used the pesticides in the past and there had never been a geese kill before. Rollins used due care in applying the pesticides: He used the recommended quantities at the appropriate time and saw no geese feeding when the pesticides were applied. After Rollins had completed the innocent act of applying the pesticides, nature took over in a manner totally outside his control: There was "no effective" way to keep the geese out of the alfalfa field. *Id.* at p. 4. An ordinary person would not expect Rollins' conduct to be criminal. The statute itself does not state that poisoning of migratory birds by pesticide constitutes a criminal violation. Such specificity would

---

1. The Court recognizes and applies the standard that vagueness challenges to statutes which do not involve first amendment freedoms must be examined in light of the facts of the case at hand. *See United States v. Mazurie*, 419 U.S. 544, 95 S.Ct. 710, 42 L.Ed.2d 706 (1975).

not have been difficult to draft into the statute. Farmers have a right to know what conduct of theirs is criminal, especially where that conduct consists of common farming practices carried on for many years in the community. While statutes do not have to be drafted with "mathematical certainty," *Boyce Motor Lines, Inc. v. United States,* 342 U.S. 337, 340, 72 S.Ct. 329, 331, 96 L.Ed. 367 (1952), they must be drafted with a "reasonable degree of certainty." *Id.* at 340, 72 S.Ct. at 331. The MBTA fails this test.

The Second Circuit, in *United States v. FMC Corp., supra,* noted that the MTBA could be applied so as to "offend reason and common sense," but then concluded that "an innocent technical violation of the Act can be taken care of by the imposition of a small or nominal fine." *Id.* at 905 (quoting from *United States v. Schultze,* 28 F.Supp. 234, 236 (W.D.Ky.1939). With deference to the respected tradition of the Second Circuit, a violation of due process cannot be cured by light punishment. Under the facts of this case, the MBTA does not give "fair notice as to what constitutes illegal conduct" so that Rollins could "conform his conduct to the requirements of the law." *United States v. Dahlstrom,* 713 F.2d 1423, 1427 (9th Cir.1983). Thus, the MBTA is unconstitutionally vague as applied to defendant Rollins under the circumstances of this case.

The Court will therefore reverse the memorandum decision of the United States Magistrate issued October 19, 1988, and will further order that the charges against the defendant be dismissed.